## GILBERTSON *v.* CLARK.

Opinion delivered January 23, 1928.

1. DEEDS—COVENANT AS TO ACREAGE.—The mention of the quantity of acres in the deed containing a definite description of the land by metes and bounds, does not amount to a covenant, unless so expressly declared, nor afford a cause of action, though the quantity of acres should fall short of the amount named.

2. FRAUD—KNOWLEDGE OF PURCHASER.—A vendee cannot complain of a fraudulent misrepresentation made by the vendor as to the number of acres sold to him, if before the sale was made and accepted he was informed as to the actual number of acres, and with that knowledge consummated the contract of sale.

3. MINES AND MINERALS—IMPLIED WARRANTY OF ACRES.—Where, in an assignment of an oil lease, the land was described by metes and bounds, and as containing 71 acres "more or less," the assignee could not maintain an action for damages on an implied warranty of the number of acres, though the tract contained only 52 or 53 acres.

4. DEEDS—QUANTITY OF ACREAGE—"MORE OR LESS".—Where the description of land in a deed is by definite boundaries, or by words of qualification as "more or less," the statement of the quantity of acres is a mere matter of description, and not of the essence of the contract, so that the buyer takes the risk of quantity, in the absence of fraud.

5. MINES AND MINERALS—SHORTAGE OF ACREAGE IN OIL LEASE.—In an assignment of an oil lease, representing the land embraced in the lease as containing 71 acres, where it embraced about 53 acres, the difference between the actual and the estimated quantity of acres was not so gross as to conclusively warrant a finding that the assignee would not have contracted, if the shortage had been known to him.

6. MINES AND MINERALS—EVIDENCE OF FRAUD IN ASSIGNMENT OF LEASE.—In a suit for payment for the assignment of an oil lease, evidence *held* not to show that the assignor had falsely represented to the assignee the number of acres in the lease.

Appeal from Ouachita Chancery Court, First Division; *J. Y. Stevens,* Chancellor; affirmed.

STATEMENT OF FACTS.

O. W. Clark, trustee, brought this suit in equity against G. E. Gilbertson and Minnesota Oil Corporation to recover judgment in the sum of $21,530.32, balance alleged to be due on an oil and gas lease; that a lien be declared against the oil and gas lease to secure the payment of said sum, and that said lien be foreclosed and the lease sold under the orders of the court for the payment of the judgment prayed for.

The suit was defended on the ground that there should be an abatement of the purchase price on account of the misrepresentation by Clark as to the quantity of land embraced in the lease.

The record shows that the lease is in writing, and was signed by O. W. Clark, trustee, on the 29th day of January, 1924. It was acknowledged before a notary public on the first day of February, 1924. The consideration for the lease was $225,000. Ten thousand dollars of this amount was paid in cash, and the balance was evidenced by promissory notes signed by G. E. Gilbertson. The lease contains a recitation that, on the first day of August, 1923, C. M. Martin executed to O. W. Clark, trustee, an assignment of oil and gas leases covering lands in Ouachita County, Arkansas, as follows: "West half of the southeast quarter lying west of the St. Louis, Iron Mountain & Southern Railway, in section 24, township 15 south, range 17 west, containing 71 acres, more or less." The lease also recites the property embraced in it as being situated in Ouachita County, Arkansas, and described as follows: "Being all that part of the west half of the southeast quarter of section 24, township 15 south, range 17 west, lying west of the Missouri Pacific Railroad, formerly known as the St. Louis, Iron Mountain & Southern Railroad."

At the time that Martin assigned the lease to Clark, trustee, there were no oil wells on the land described in the lease. At the time Clark, as trustee, executed the lease

to Gilbertson, oil wells had been drilled on the lease, and were producing oil. Wells were being drilled at the time of the execution of the lease, and Gilbertson at once took possession of the lease and continued the drilling operations. In June, 1924, Gilbertson asked for and obtained an extension of the time of payment of $12,500 due on the 6th·day of July, 1924, until the 15th day of August, 1924.

According to the testimony of G. E. Gilbertson, he first became acquainted with Dr. O. W. Clark in January, 1924. Daniel McGahey and W. G. Sawyer came to him and told him that they had a good lease. McGahey introduced the witness to Dr. Clark. Mr. Sawyer and Judge James Gould were present. They began to discuss the purchase of a lease from Dr. Clark, known as the Jeff Berry lease. The deal was closed about the 29th day of January, 1924, about two weeks after the witness met Dr. Clark. Dr. Clark told him that the lease contained 71 acres, that it was a good lease, had four wells on it, and that they were drilling a fifth well. Sawyer and McGahey both represented the lease to contain 71 acres. These representations were made between the 13th and 20th of January, 1924. Judge Gould represented to the witness that there were 71 acres of the lease, and he figured that twelve wells could be drilled on it, with six acres to the well. Gilbertson was president of the Minnesota Oil Corporation, and was acting as its agent in the purchase of the lease. The lease was taken in his name and later transferred to the Minnesota Oil Corporation. Witness would not have purchased the lease had he known that there was a shortage in the acreage and that it only contained between 52 and 53 acres. Witness did not learn that the lease contained less than 71 acres until some time in December, 1924. He immediately wrote to Dr. Clark about the shortage, and told him that the matter would have to be settled before he would make any further payments on the lease.

W. G. Sawyer was also a witness for the defendants. According to his testimony, Daniel McGahey and he acted

as brokers in selling the lease to G. E. Gilbertson. Sawyer represented to Gilbertson, by authority from O. W. Clark, that the number of acres contained in the lease was 71 acres. O. W. Clark and James Gould both told him to represent to Gilbertson that there were 71 acres in the lease.

Olaf F. Bruce, treasurer of the Minnesota Oil Corporation, testified that W. G. Sawyer came before the board of directors of that corporation on January 23, 1924, and told him that Dr. Clark had a lease consisting of 71 acres, which was a good lease.

H. A. Thackery, a civil engineer, was a witness for the plaintiff. According to his testimony, he made a survey of the lease during the month of January, 1924, and made a plat of the survey. He gave a tracing of the plat, which showed the number of acres in the lease to be 52.12 acres, to Dr. Clark.

According to the testimony of Dr. O. W. Clark, he never knew W. G. Sawyer directly in his life, and did not employ him to sell the lease in question. About the middle of January, 1924, Daniel McGahey, G. E. Gilbertson, and a man who, he subsequently learned, was W. G. Sawyer, came to his office for the purpose of purchasing the lease in question. Witness had never seen either Sawyer or Gilbertson before, and thought they were associates. He did not tell Gilbertson that the lease covered 71 acres and did not authorize Sawyer to do so. The lease was not sold on an acreage basis. Witness, as trustee for himself and associates, purchased the lease from Martin on an acreage basis because, at that time, no oil well had been drilled on the lease and it was not known whether or not there was any oil in it. At the time the lease was sold to Gilbertson oil wells had been drilled on the lease and were producing oil. For this reason the sale was made in gross and not on an acreage basis. Clark told Gilbertson that there was a shortage of acreage, and, even after the down-payment of $10,000 had been made, he stated to Gilbertson that there was a shortage, and said that, if he did not wish to take the lease because

there were only 52.12 acres, he would return him his $10,000 and cancel the lease. Gilbertson did not want to do this, because he had some acreage which had not been drilled for oil, and he could not sell it unless he also had some producing acreage.

Daniel McGahey was also a witness for the plaintiff. According to his testimony, W. G. Sawyer told him that he had some people who wanted some acreage that was producing oil, and McGahey showed Sawyer the map of the oil lease, which showed the lease to contain 71 acres. Sawyer asked witness if there were 71 acres, and witness told him that he did not know. They called up Dr. Clark that night about selling the lease, and he sent Judge Gould down the next morning to talk the matter over. Witness did not represent to Gilbertson that there were 71 acres in the lease. He told Gilbertson that the old map showed 71 acres, and that he did not know anything but what the old map showed. He did not have any further conversation with Gilbertson about the number of acres. He agreed to divide the commission with Sawyer, because Sawyer had introduced Gilbertson to him. Dr. Clark did not employ Sawyer to sell the lease and did not know that the witness had agreed to divide the commission with him.

Judge James Gould was also a witness for the plaintiff. According to his testimony, he was beneficially interested, and assisted in selling it to Gilbertson. He never saw W. G. Sawyer in his life, and did not authorize him to represent to Gilbertson that there were 71 acres in the lease. Witness did not represent to Gilbertson that there were 71 acres in the lease. On the contrary, he expressly stated to Gilbertson that they never sold a lease where they guaranteed the acreage. He then told Gilbertson that the tax record showed the lease to contain 71 acres, but that he would have to be his own judge about that.

M. L. Galliger, a witness for the plaintiff, testified that he came to Camden on the first day of February, 1924, to take charge of the lease, and met Mr. Gilbertson

a few days after he got there. Gilbertson told Dr. Clark that he had been talking with Mr. G. H. Speary, who was drilling a well on the lease, and that Speary mentioned to him that he had had a survey of the lease made. Clark told Gilbertson that he had had it surveyed a few days before, and that the lease contained 52.12 acres. Clark told him that he would call off the trade and give him his $10,000 back if he was not satisfied. Gilbertson said that he was satisfied, and thought that he had the best lease in the field, and would not give it back.

According to the testimony of G. H. Speary, he met Gilbertson at the time he was looking at the property with a view of purchasing the lease. Speary knew the lease was short, and told Gilbertson that he understood that there were only 52 or 53 acres in it. Speary showed Gilbertson the plat which showed that the lease only contained 53 acres.

The chancellor found the issues in favor of the plain-tiff, and a decree was rendered accordingly. The case is here on appeal.

*Powell, Smead & Knox,* for appellant.

*T. J. Gaughan, J. T. Sifford, J. E. Gaughan* and *E. E. Godwin,* for appellee.

HART, C. J., (after stating the facts). The law applicable to cases of this sort is well settled in this State. In *Joseph* v. *Baker,* 95 Ark. 150, 128 S. W. 864, it was held that the mention of the quantity of acres after a definite and certain description of the land by metes and bounds does not amount to a covenant in a deed, unless so expressly declared, nor afford a cause of action, though the quantity of acres should fall short of the amount named. It was further held that a vendee cannot complain of a fraudulent misrepresentation made by the vendor as to the number of acres sold to him if, before the sale was made and accepted, the vendee was informed as to the actual number of acres in the tract sold, and, with that knowledge, consummated the contract of sale. In such case the vendee can only recover damages upon the theory that he was induced to purchase the land by

the fraudulent representation of his vendor as to the quantity of the land. Where the vendee has knowledge of the deficiency of the quantity of the land, he is not mis· led by any misrepresentation of his vendor and is not induced to make the contract by a misrepresentation of the quantity of the land which he knows to be untrue. In short, if he knows that there is a deficiency in the quantity of the land and knows how much land he is purchasing, he has no right to rely upon the representation of his vendors as to the quantity of the land.

Again, in *Ryan* v. *Batchelor,* 95 Ark. 375, 129 S. W. 787, it was held that, when a vendor conveys for a specified price a tract of land which is described by metes and bounds or otherwise, with the words added, "containing a specified number of acres, more or less," this is a contract not by the acre but in gross, and does not by implication warrant the quantity. It was further held that a misrepresentation in a sale of land, to affect the validity of the contract, must relate to some matter of inducement to the making of it, in which, from the relative position of the parties and their means of information, the one must necessarily be presumed to contract upon the faith and trust which he reposes in the representations of the other, on account of his superior information and knowledge in regard to the subject of the contract.

In the application of the principles of these cases to the facts in the case at bar, appellants cannot maintain an action for damages upon the ground that there has been a breach of a covenant of any implied warranty of the quantity of the land. The lease shows that there was no express warranty of the quantity of the land, and appellants do not claim that the deed contains a clause expressly warranting the quantity of the land. Hence their cause of action is founded upon the ground that they were induced by false representations as to the quantity of the land to agree to pay the price expressed in the lease.

This is an application of the general rule that, where the description of the land is by definite boundaries, or by words of qualification, as "more or less," the statement of the quantity of acres in the deed is a mere matter of description, and not the essence of the contract. Hence the buyer takes the risk of the quantity, if there is no element of fraud in the case. It cannot be said in this case that the difference between the actual and estimated quantity of acres is so gross as to conclusively warrant a finding that the parties would not have contracted had the shortage been known. It is true that the price was considerable, but, when the attending circumstances are considered, it is evident that the quantity of acres was not the controlling factor in the premises.

Gilbertson was representing a corporation which was speculating in oil and gas leases, and the corporation had a quantity of acreage which had not been developed for oil or gas. He wished to purchase the lease in question for his corporation and to add it to what is termed "wildcat" acreage in order to better sell that acreage. In other words, the lease in question had been drilled for oil and had producing wells on it at the time Gilbertson purchased the lease. According to the testimony of Dr. Clark, Gilbertson wished to add these producing acres to his wildcat acreage in order to sell the latter.

As to whether the representation as to the quantity of acres was actually made, the testimony is in direct and irreconcilable conflict. Gilbertson testified that both Dr. Clark and Judge Gould represented that the lease contained 71 acres, and that he would not have purchased it if he had not believed the representation to be true. He is corroborated by the testimony of W. G. Sawyer in every respect. The testimony of Bruce only goes to the fact of the representation made by Sawyer as to the number of acres in the lease, and adds nothing to the testimony of Sawyer on that point. On the other hand, Judge Gould says that he never knew Sawyer, and did not authorize him to make such representation about the quantity of land in the lease. Dr. Clark denies having

employed Sawyer to represent him in selling the lease, and denies authorizing him to represent that the lease contained 71 acres. He testified that McGahey, who was his agent, brought Sawyer to his room with Gilbertson, and that he supposed that Gilbertson and Sawyer were associated together. McGahey says that he only showed the old lease to Gilbertson, and told him that that was all that he knew about the quantity of acreage in the lease. This could not be said to be a concealment of the quantity of the acreage, for both Dr. Clark and Speary testified that Gilbertson was told about the shortage in the lease while he was examining the property with a view to purchasing the lease. The lease was executed the latter part of January, 1924, and Gilbertson says he did not discover the shortage until some time in December of that year. He admitted that he was on the lease frequently during this time, and was familiar with locating and drilling wells on such leases. The land as described in the lease was 71 acres, and it is deducible from all the circumstances that a man of Gilbertson's experience in oil leases would have ascertained the shortage by being on the land much sooner than he did discover it. This is a circumstance which might be considered in testing his credibility.

We have examined the evidence as it appears in the record, and considered it in all its bearings, and have reached the conclusion that it cannot be said that a preponderance of the evidence shows that Dr. Clark falsely represented the quantity of the acreage to be 71 acres. Therefore the decree of the chancellor will be affirmed.