HAYS *v.* HAYS.

4-3805

Opinion delivered April 1, 1935.

752

*Bush & Bush,* for appellant.
*McMillan & McMillan,* for appellee.

JOHNSON, C. J. Appellant and appellee are brothers. Their father, John Hays, prior to his death, divided his large real estate holdings among his children, and in this division appellee, J. R. Hays, was given a tract of land containing 630.42 acres lying in Clark County, Arkansas. Appellee acquired by purchase an adjoining 50-acre tract. Appellant and appellee were reared upon and in the immediate vicinity of these lands, and each of them assisted in the clearing and improving of them. The Little Missouri River is the southern boundary of the tracts of land in this controversy. About 1925 appellee became involved in a criminal prosecution which resulted in his conviction. Appellee decided to sell his lands and leave the country and so advised his brother, the appellant here. Appellant offered appellee $30 per acre for his lands, and this offer was accepted by appellee. In effecting the contract of purchase, appellee told appellant that he owned 680.42 acres having acquired 630.42 acres from their father by gift and 50 acres by purchase. The contract of purchase was consummated for a recited consideration of $20,412.60 of which $10,412.60 was paid in cash and the balance of $10,000 was evidenced by a vendor's lien note. The legal description employed by the parties in the deed of conveyance was as follows:

West half of east half of section 26; east half of section 35; east half of southeast quarter of section 23, except six acres off the northeast corner of the northeast quarter of the southeast quarter heretofore by me deeded to Ed Wiley; east half of southwest quarter of southeast quarter of section 23; all in township nine south, range

22 west; fractional east half of northeast quarter of section two, township 10 south, range 22 west; containing in all 630.42 acres more or less; also southeast quarter of southwest quarter of section 36, township nine south, range 22 west, being forty acres, also fractional part of northwest quarter of northeast quarter, and fractional part of northeast quarter of northwest quarter of section one, township 10 south, range 22 west, described as follows: Commencing 70 yards east of the ½-mile corner running with section line west 220 yards, thence south 220 yards, thence east 220 yards, thence north 220 yards to place of beginning, containing ten acres more or less. (This conveyance being of a total of 680.42 acres, more or less.)''

Appellee instituted this proceeding in the Clark County Chancery Court against appellant to foreclose his vendor's lien as evidenced by the purchase money note aforesaid, and appellant answered the complaint by alleging: First, certain payments. (This branch of the case was decided by the chancellor and no appeal or cross-appeal is prosecuted therefrom.) Second, that appellee sold and appellant purchased 680.42 acres of land at $30 per acre, but subsequent to said sale and purchase appellant ascertained that there was and is a shortage in said tract of land conveyed of 110.46 acres and that the purchase price should be reduced on account of said shortage in the sum of $3,313.80 or at the rate of $30 per acre. On this branch of the case the chancellor heard testimony which will be hereinafter referred to, but refused to reduce the purchase price on account of said shortage, and this appeal is from that part of the decree.

The legal description of the land conveyed by appellee to appellant as contained in the deed indicates that no express warranty of acreage was intended by the parties. The applicable rule is that where the instrument contains words of qualification, such as ''more or less'' or words of similar import, the statement of quantity of acres conveyed is a mere matter of description, and not of the essence of the contract, and the purchaser takes the risk of quantity, there being no fraud or gross

mistake. In the early case of *Harrell* v. *Hill*, 19 Ark. 102, the rule was stated thus:

"The mention of quantity of acres, after a certain description of the subject by metes and bounds, or by other known specifications, is but matter of description, and does not amount to any covenant, or afford ground for the breach of any of the usual covenants, though the quantity of acres should fall short of the given amount. See 4th Kent's Com. (7th edition) 514, 516; *Mann* v. *Pearson,* 2 Johns. Rep. 27; *Smith* v. *Evans*, 6 Bing. Rep. 102; *Doe ex dem., etc.* v. *Porter,* 3 Ark. 18, 57; *Powell* v. *Cook,* 5 Mass. Rep. 36, 37; *Jackson* v. *Moon,* 5 Cow. Rep. 706; *Allison* v. *Allison,* 1 Yerg. Rep. 16; 1 Aiken's Rep. 325; *Roat* v. *Puff,* 3 Barb. S. C. Rep. 353. In this latter case, the deed contained the language: 'There being in the lot conveyed 135 acres, strict measure,' etc., yet it was held there was no covenant to make up the deficiency. In the case before us, the covenant contains as full a description of the premises by metes and bounds, as it is presumed it was convenient for the defendant to give at the time it was executed, and the quantity, 180, being expressed or mentioned after this more certain or definite description, must be regarded as merely part of the description, and not to amount to any covenant as to that precise quantity. Besides this, whenever it appears, by definite boundaries, or by words of qualification, as 'more or less' or as 'containing by estimation,' or the like, that the statement of the quantity of acres in the deed is mere matter of description and not of the essence of the contract, as a general rule, the buyer takes the risk of the quantity, if there be no intermixture of fraud in the case."

True, appellant testified that the sale and purchase were by the acre and not in gross, and his testimony is corroborated by other facts and circumstances in this regard, but it is also true that appellee testified that the sale and purchase were in gross, and his testimony is likewise corroborated by the circumstance that all the cleared lands and improvements upon the tract were located upon lands actually conveyed and accepted by appellant. *Prima facie,* the use of the words "more or less" or

words of similar import in a contract of purchase implies that the sale is in gross, and we are unwilling to say that this *prima facie* showing, coupled with appellee's testimony and facts and circumstances in corroboration thereof, were overcome by appellant's testimony as corroborated.

Since there is no express warranty in the contract of purchase in reference to the quantity of land conveyed and the testimony being insufficient to establish a sale by the acre, as a matter of fact, it necessarily follows that appellant's right to a reduction of the purchase price on account of said shortage is dependent upon the fraud of appellee in affirmatively representing quantity upon which appellant relied or that there was such a gross mistake as to quantity as to amount to constructive fraud. On the question of actual fraud, but little need be said. There are no positive elements of fraud alleged or proved. Appellant admits that he was reared in the immediate vicinity of these lands and knew them equally as well as appellee; he knew that appellee acquired title to the greater part of said tract of lands from their father; he knew that these lands lay north of the Little Missouri River. It certainly and definitely appears that appellee made no misrepresentation of facts upon which appellant relied; therefore actual fraud is not established in the premises.

On the question of gross mistake, it may be said that the testimony reflects that a survey made subsequent to the purchase demonstrates an actual shortage of approximately 100 acres. The testimony on behalf of appellant tended to show a shortage of 110.46 acres, and that on behalf of appellee tended to show a smaller acreage shortage, but this discrepancy is due to the calculation of certain lands lying within the high water banks of the Little Missouri River. This difference, however, is of no importance here. The question presented, is a shortage of approximately 15 per cent. of the actual acreage conveyed of sufficient magnitude to warrant the court in saying, as a matter of law, it was a gross mistake?

The mere use of the words "more or less" or words of similar import, following the legal description contained in the contract of purchase, serves notice that the precise quantity stated in the contract is not demonstrable by survey. 4 Kent, Com. (7th Ed.) 517 note.

In *Harrell* v. *Hill, supra,* after reviewing the authorities, we expressly adopted the rule that, where the stated quantity of land was modified by the phrase "more or less" or words of similar import, the intention of the parties was to cover inconsiderable or small differences in quantity conveyed.

In the case last cited it was determined that a shortage of 84 acres of a description containing 180 acres, when considered under the facts and circumstances there presented, amounted to such fraud and misrepresentation as to warrant the reduction of the purchase price to the extent of 60 acres. It is to be noted, however, that 24 acres of the actual shortage was not taken into account as such because of the language of the contract of purchase and the good faith of the seller in reference thereto. In other words, 24 acres of this shortage was not taken into account in the reduction of the purchase price because of the qualification "more or less" in the contract.

In *Gilbertson* v. *Clark,* 175 Ark. 1118, 1 S. W. (2d) 823, we had under consideration the exact question here presented. The contract of purchase there as here described the lands by metes and bounds, and as containing 71 acres "more or less." The shortage was definitely ascertained to be 18 acres or more than 25 per cent. of the total acreage conveyed. We stated the applicable rule as follows:

"It cannot be said in this case that the difference between the actual and estimated quantity of acres is so gross as to conclusively warrant a finding that the parties would not have contracted had the shortage been known. It is true that the price was considerable, but, when the attending circumstances are considered, it is evident that the quantity of acres was not the controlling factor in the premises."

Moreover, it is certain that the law does not look solely to the quantity of the shortage as the criterion in allowing to the purchaser compensation therefor, but it also takes into account all other pertinent facts and circumstances tending to show the intentions and purposes of the parties in effecting the sale and purchase, and determines therefrom whether or not the mistake was of such magnitude and importance as to warrant the court in saying that the contract would not have been consummated if both parties had known the facts. When the facts and circumstances of this case are considered in the light of the rule just stated, it is apparent that the quantity of land conveyed by appellee to appellant was not of controlling importance. Appellant's information in reference to the location, improvements and fertility of the lands admittedly was equal to that possessed by appellee, and we doubt not but that this contract of purchase or sale would have been consummated between these parties irrespective of the subsequent ascertained shortage.

The case of *Glover* v. *Bullard,* 170 Ark. 58, 278 S. W. 645, is urged upon us by appellant as decisive of his position. On this contention it suffices to say that the contract of purchase there considered was one where the parties made quantity of acres of the essence of the contract of purchase, and not mere matter of description as presented here.

Neither can we agree that *Carter* v. *French,* 186 Ark. 954, 57 S. W. (2d) 408, is controlling of the contentions here made. The shortage there was 165 acres out of an estimated acreage of 620 acres. This was approximately 26 per cent. Moreover, the chancellor's findings there were that a gross mistake had been made by the parties in consummating the sale. Whereas the chancellor's finding is to the contrary here. We there declined to overturn the chancellor's finding on the question of fact. We likewise decline to overturn the chancellor's finding on the question of fact presented here.

It follows from what we have said that the decree must be affirmed.