YOUNG v. BRADSHAW.

5-574                                    274 S. W. 2d 466

Opinion delivered January 17, 1955.

WARD, J. T. J. Aycock and J. S. Bradshaw, being the owners of 640 acres of land, entered into a written lease contract with appellant, Herman B. Young, whereby Young was to pay $1,500.00 for the open, tillable land stated to be 200 acres more or less for the calendar year beginning January 1, 1953. Young made a down payment of $250.00 cash and executed a note for the balance of $1,250.00. Both instruments are dated January 1, 1953, but it appears likely that they were actually executed sometime later and possibly as late as March, 1953. On September 15, 1953, Aycock sold his one-half interest in said land to J. S. Bradshaw and also assigned to him his one-half interest in the note and lease contract. About a week later J. S. Bradshaw sold a one-third interest in the land to R. J. Hussey and a one-third interest to F. B. Bradshaw, assigning to them the same interest in said note and lease contract.

This suit was instituted by J. S. Bradshaw, R. J. Hussey and F. B. Bradshaw against appellant, Herman B. Young, on March 29, 1954, to collect the said note for $1,250.00. Young answered, after admitting the execution of the note and lease contract, that he rented 200 acres of tillable land at $7.50 per acre; that in fact there were only approximately 127 acres of tillable land and that he notified Aycock and J. S. Bradshaw of this fact before the note and lease contract were assigned to Hussey and F. B. Bradshaw; and that he, Young, had a right to assert all defenses against Hussey and F. B. Bradshaw which he could lawfully assert against Aycock and J. S. Bradshaw. Appellant asserts that he is entitled to an abatement on 73 acres at $7.50 per acre,

and that therefore he is indebted to appellees only in the amount of $702.50.

The matter was submitted to a jury under instructions by the trial court and a judgment was rendered in favor of appellees in the full amount of $1,250.00 plus accrued interest.

Appellant on this appeal makes only one objection to the procedure in the trial court, and that objection is based on Instruction No. 3 as given by the court. So far as the abstracted record shows the trial court only gave three instructions. Instruction No. 1 was to the effect that Young was obligated to pay the note sued on unless he proved failure or partial failure of consideration. Instruction No. 2 told the jury that the burden was on appellant to show by a preponderance of the evidence that there was such a failure of consideration. Appellant made no objection to these first two instructions and apparently concedes they are correct. Instruction No. 3 reads as follows:

"You are instructed that the words in the lease, '200 acres more or less,' do not of themselves constitute a covenant or warranty that there is such a quantity of land. Before you can sustain the defendant's theory of partial failure of consideration, he must establish by a preponderance of the evidence that plaintiff's assignor, T. J. Aycock, made a fraudulent misrepresentation to him that there was 200 acres of open land, either knowing at the time that there was a smaller quantity, or realizing at the time that he did not actually know one way or the other, and that the defendant relied thereon."

To the above instruction appellant objected generally and specifically on the ground "that it is adequate . . . if a case of constructive fraud is shown," together with the fact that the court "has already given plaintiff's Instruction No. 2 on failure or partial failure of consideration, which fully covers the issues in this case."

Appellant bases his contentions for a reversal herein on three points which are as follows: 1. Appellees are

not holders in due course and are therefore subject to the defense of failure of consideration; 2. There was a partial failure of consideration; and 3. There was a material deficiency in the acreage and Aycock and J. S. Bradshaw were aware of this when they made oral representations that there were 200 acres of tillable land.

1. It is not necessary to discuss whether Hussey and F. B. Bradshaw were holders in due course, because the case was submitted to the jury on the theory that they were not such holders, and appellant has no ground for complaint on this point.

2. The question of failure or partial failure of consideration was submitted to the jury under Instructions No. 1 and No. 2 which were not objected to by appellant, so the verdict of the jury on this point must be taken as final if it is supported by substantial evidence. Instruction No. 2 correctly stated the law as announced in the recent case of *Gray* v. *McDougal, Adm'x.*, 223 Ark. 97, 264 S. W. 2d 403. We have carefully reviewed the evidence and are of the opinion that it is sufficient to support the jury's verdict.

The undisputed evidence is that no mention is made in either the note or the lease contract about $7.50 per acre. Notwithstanding this however appellant had a right to introduce oral testimony to show any deceit or fraud practiced upon him by his lessors. Again this question of deceit or fraud is a matter to be passed on by the jury. We find in the record evidence from which the jury might have found that lessors refused to assure appellant that there were actually 200 acres in cultivation; that nothing was said about renting the land for $7.50 per acre; that appellant had ample opportunity and did actually inspect the land to determine for himself the number of acres in cultivation; that lessors offered to reimburse appellant for what he had been out before the land was planted in soybeans; that appellant objected only after the beans were planted and after dry weather indicated a poor crop year; and that the rental value of the land was actually as much as $1,500.00.

Appellant states that the evidence was sufficient to support a finding of partial failure of consideration, and reiterates "that there was substantial evidence in the record to support the partial failure of consideration on the note and lease contract and that the preponderance of the evidence was to this effect." Even though we might agree with appellant in these statements, yet they do not pose the question presented to us. This cause was tried before a jury and its finding must be sustained if supported by substantial evidence, and we think it is.

3. Finally, appellant argues that he is entitled to an abatement to the extent of the deficiency in acreage regardless of the good faith of lessors and regardless of whether or not he (appellant) was induced to sign the lease and note because of lessors' misrepresentations. We have decided to give consideration to this contention although we point out that it is doubtful if it has been properly presented to us. Apparently this contention is based on appellant's objection to Instruction No. 3 wherein he pointed out that it was adequate "if a case of constructive fraud is shown." We can see no ground on which to base "constructive fraud" which usually arises from a confidential relationship not present in this case:

To support his contention on this point mentioned above appellant relies on *Harrell* v. *Hill,* 19 Ark. 102, and *Soloman* v. *Deese,* 142 Ark. 189, 218 S. W. 657. However, notwithstanding some expressions in the cited cases appear, when considered alone, to support appellant's argument, we do not think they are controlling here. In the *Harrell* case great stress was placed on principles of equity in reaching a conclusion. The court's discussion covered four separate phases, viz: First. The effect of designating so many acres, more or less, in describing land in a deed or lease, holding that it did not constitute a covenant or warranty; Second. Oral evidence can be introduced to verify a deed or lease where fraud is alleged; Third. There was in fact a deficiency in acreage, and; Fourth. Should the purchaser recover? In answering this question in the affirmative

the court did not discuss the issues raised in the case under consideration, such as: (a) Was there a failure, or partial failure, of consideration, and (b) Did the lessor represent there were 200 acres of tillable land, (c) If he did, did he know this statement was false, or, not knowing did he represent it to be true, and (d) Did the lessee rely on the lessor's representations and was he induced thereby to execute the lease and note.

In the *Soloman* case, *supra*, the court likewise did not discuss the issues enumerated above, and in fact it had no occasion to do so because the purchaser [the State] was not a party to the suit and the seller [Soloman] admitted to misrepresenting the acreage and volunteered to make it good. Apparently the court relied on the *Harrell* decision [and on *Drake* v. *Eubanks,* 61 Ark. 120, 32 S. W. 492, which in turn relied on the *Harrell* case] to arrive at the measure of abatement. Consequently we cannot say that these two Chancery cases are decisive of the issues coming to us here from a cause tried in the Circuit Court.

In Instruction No. 3 the court in effect told the jury that appellant could not recover on a covenant or warranty in the lease because it contained the phrase "200 acres more or less." The court was correct on the authority of the *Harrell* case, *supra*, the *Soloman* case, *supra, Brown* v. *LeMay,* 101 Ark. 95, 141 S. W. 759; *Ryan* v. *Batchelor,* 95 Ark. 375, 129 S. W. 787, and numerous other decisions of this court.

Likewise the court correctly declared the law in Instruction No. 3, when it told the jury in effect that, before appellant could win, it must find Aycock represented there were 200 acres of tillable land when he knew there was not or, not knowing, he made the representation as a fact, and also that appellant relied on such misrepresentation in deciding to execute the lease and note.

In the *Ryan* case, *supra*, the court, in considering a similar question and after stating an action could not be based on a breach of covenant, said:

"It is founded upon the alleged fraud in making a false representation as to the quantity of the land, which induced the purchaser to pay the price therefor. Such an action cannot be founded upon the breach of any of the usual covenants that are contained in a deed and which were contained in this deed."

Further considering the effect of misrepresentations, the court said:

"If the statement was made only as an expression of opinion, or if it was not made in a manner so as to induce the other to act in reliance thereon, then such representation, even though not true, would not be sufficient to base an action thereon for deceit."

Where a lease contract describes land as so many acres more or less it is construed as one not by the acre, but in gross, as stated in *Cox* v. *Fisher,* 146 Ark. 223, 225 S. W. 305, and other decisions of this court. In such cases we have many times held that an action will not lie for a breach of covenant or warranty of the quantity of land but that an action will lie for fraud or misrepresentation by which the lessee was misled to his damage. See *Brown* v. *LeMay, supra.* This rule was announced in *Mobbs* v. *Burrow,* 112 Ark. 134, 165 S. W. 269; *English* v. *North,* 112 Ark. 489, 166 S. W. 577; *Cady* v. *Rainwater,* 129 Ark. 498, 196 S. W. 125; *Troyer* v. *Cameron,* 160 Ark. 421, 254 S. W. 688, and *Gilbertson* v. *Clark,* 175 Ark. 1118, 1 S. W. 2d 823.

Finding no reversible error, the judgment of the lower court is affirmed.

Justice McFADDIN concurs.