Ralph **CANTRELL** and Jane Cantrell, Appellants,

v.

Lester **McDONALD**, Blanche McDonald, and Dwight Crader, Trustee, Respondents.

No. 52130.

Supreme Court of Missouri, Division No. 1.

March 13, 1967.

Kenneth L. Dement, Sikeston, for appellants.

J. Lee Purcell, Hyde, Purcell & Wilhoit, Poplar Bluff, for respondents.

HOUSER, Commissioner.

Action in equity by Ralph Cantrell and wife, purchasers named in a written contract for the sale of farm land, against Lester McDonald and wife, the sellers, and Dwight Crader, the trustee in a deed of trust executed by purchasers. In Count I plaintiffs sought rescission and cancellation of the contract of sale and refund of $10,000 paid down on the contract. In Count II plaintiffs prayed for cancellation of the warranty deed executed by the McDonalds, cancellation of the deed of trust executed by purchasers, an injunction against foreclosure of the deed of trust, cancellation of the contract of sale, refund of the $10,000 down payment and restoration of the status quo prior to the execution of the contract.

The trial chancellor found the issues for defendants and against plaintiffs and decreed that plaintiffs take nothing. Plaintiffs have appealed, making the single point that the decree is against the evidence and the greater weight of the credible evidence and that they are entitled to rescission, refund, etc. because they clearly

proved that the acts and conduct of defendants constituted a fraudulent misrepresentation of the acreage contained in the tract of land purchased by plaintiffs. They claim that the defendants represented that the tract contained 120 acres and that they were to receive 120 acres plus a house and barn and the land surrounding the house and barn, but that in fact they received only 107.9 acres. Contrarily, defendants maintain that they made no representation to the Cantrells that they were purchasing 120 acres of land; that the land described in the contract of sale was the west half of the farm, less 10.59 acres previously sold for right of way purposes, plus the 1.99 acres where the house and barn stand; that this was a sale of a parcel of land in gross and not a sale by the acre, as shown by the contract of sale and the warranty deed into which the contract was merged.

The following facts are undisputed: The McDonalds owned a part of Section 27, Township 27, Range 14 in Scott County, originally consisting of 240 acres, being the four quarter quarter sections making up the southeast quarter, and the two quarter quarter sections constituting the east half of the southwest quarter, of the section. Prior owners had deeded away 3.5 acres of the 240 acres for road purposes. In 1961 the McDonalds executed a right of way deed to the state highway commission conveying 10.59 acres off the west side of the land for the construction of Interstate Highway No. 55. Lester McDonald told Reginald Merrick, a real estate agent, that he wanted to sell "the whole thing," 240 acres, and they entered into a listing contract "for the 240 acres." Merrick interested Ralph Cantrell in the land but Cantrell did not want the whole tract. About a week before the contract of sale was signed Ralph Cantrell, Mrs. Cantrell, Lester McDonald and Reginald Merrick met at the farm and discussed sale of a part of the farm. The only discussion about price was the offer to sell the land for $40,000. This was a package price. There was no mention or discussion of the sale of the property at so much per acre. On Jauuary 8, 1964 the Cantrells, the McDonalds, and Merrick met at the office of an attorney, who was employed to draw the papers. The attorney prepared and the Cantrells and McDonalds signed a contract for the sale of real estate. The property was described in the contract as follows:

"120 acres being the West Half of the following described tract: The Southeast Quarter and the East Half of the Southwest Quarter (except 10.59 acres I–55 B–195 P–229) Section 27, Township 27, Range 14 in Scott County, Missouri. ALSO, the house and barn and the lots on which the house and barn sit, which is located in the East Half of said tract."

The consideration was $40,000, payable $10,000 at the time of the execution of the contract, balance ($30,000) payable in 15 annual installments of $2,000; first installment due January 1, 1965. Sellers were to convey by warranty deed to be executed at the time of the contract, placed in escrow and delivered on payment of balance of purchase price. Provision was made for examination of an abstract of title, survey of the house lot and barn lot for the purpose of obtaining a legal description, delivery of possession on or before February 1, 1964. Buyers were to receive one fourth of all U. S. Government farm allotments then held by sellers "on the above described 240 acres, and another 240 acres which Seller owns." On January 8, 1964 the warranty deed was prepared and executed but the space for the description of the land was left blank. Cantrell made the down payment of $10,000. The Cantrells entered into possession and began cultivating the land. The abstract was examined; title was approved; the survey of the 1.99 acre tract was made, and a metes and bounds description of the 1.99 acre tract was supplied; the surveyor ran a north and south line dividing the entire farm into two equal parts. With this in-

formation the attorney wrote the following description in the blank deed:

"All the West Half (W½) of the following described Tract: The Southeast Quarter (SE¼) and the East Half (E½) of the Southwest Quarter, except 10.59 Acres, conveyed to the State of Missouri for Right-of-way for Interstate Highway No. 55, situate in Section Numbered Twenty-seven (27), Township Numbered Twenty-seven (27) North, Range Numbered Fourteen (14) East of the Fifth (5th) Principal Meridian, in Scott County, Missouri. ALSO, A tract or parcel of land containing 1.99 acres, out of the Northwest corner of the East one-half (E½) of the Northwest Quarter (NW¼) of the Southeast Quarter (SE¼) of Section Numbered Twenty-seven (27), Township Numbered Twenty-seven (27) North, Range Numbered Fourteen (14) East of the Fifth (5th) Principal Meridian and described as follows: Beginning * * * [here follow the courses and distances in the metes and bounds description]."

The deed of trust is dated April 8, 1964. On that date the attorney mailed the warranty deed and the deed of trust to the recorder of deeds, and they were recorded. In 1964 Cantrell was in two automobile accidents and spent much time in hospitals. The operation of the farm was not profitable. He defaulted on the $2,000 installment due January 1, 1965. He tried unsuccessfully to refinance the loan. In February, 1965 he was informed by Herb Stephens, who wanted to buy the farm, that it contained only 108 acres. Cantrell employed counsel and demanded rescission of the contract and restoration of the down payment. Foreclosure proceedings were commenced, and this suit followed.

The hotly disputed question of fact for the trial chancellor, now before us for resolution, is whether Lester McDonald made a representation as to the amount of the acreage in the tract. Ralph Cantrell testified that at the meeting at the farm McDonald said that he would sell him a 120-acre tract of land with the house and barn and land surrounding them; that at the attorney's office on January 8 McDonald told him "there was a hundred and twenty acres there" and that he was buying 120 acres with the house and barn; that when, in McDonald's presence, Herb Stephens said to Cantrell that he wanted to buy *his farm of 108 acres*, McDonald denied that there were less than 120 acres. Cantrell conceded that he had read the contract of sale and saw the "except 10.59 acres" language but claimed that he was not a lawyer and did not know what it meant; that at that time he did not know what "except" meant; that it did not occur to him that there might be any land taken off the west end of those forties where the highway went across and that he never had any conversation with anyone about that. He conceded, however, that at the time he entered into the contract he knew that Interstate Highway No. 55 touched the west end of the farm, and acknowledged that while farming the land during 1964 he suspected that the highway had taken some of the acreage off this farm; that it was "obvious if you looked at it"; that "anybody could see it after we got to looking at it good."

Ralph Cantrell's testimony that Lester McDonald made representations as to acreage is not corroborated. None of the persons (including his wife) who were present at the farm, and none of those present at the attorney's office, supported his testimony that he was offered and that he bought a farm of 120 acres, plus house, barn and lot. Not only McDonald but also the real estate agent, who was a "good friend" of Cantrell's, and the attorney who, acting for and paid by both parties, drew the papers, contradicted Cantrell on this subject.

McDonald testified that at the time the contract was signed he knew that the total farm acreage was only 229 acres; that he did not know how many acres Cantrell was to get; that at no time did he represent to the Cantrells that the west half of

the farm, which he was selling to them, contained 120 acres; that he went with Merrick and Cantrell to the farm, drove around on it to a point an eighth of a mile from Interstate Highway No. 55; that McDonald explained to the Cantrells that there was an exception of the part the highway had taken off; that in McDonald's presence Merrick told Cantrell that the highway had taken a portion of the west side of the farm but that land was "old coarse sand" and that this did not hurt the farm at all; that in fact it made the farm worth more money, and that Cantrell had agreed. McDonald further testified that there was no discussion at the attorney's office about the acreage Cantrell was supposed to get. He denied telling Cantrell, in the presence of Herb Stephens, or at any other time, that there were 120 acres in the farm.

Merrick testified that they met on the farm, drove over it, came back up to the buildings, and that McDonald said to Cantrell, "Now I am going to sell you the 120 acres less what the highway has taken off plus what the buildings are sitting on"; that McDonald and Cantrell walked out into the field and McDonald showed Cantrell where the old boundary line was and approximately where the line would be, and they both agreed on a survey; that he pointed out to Cantrell the benefit of the blacktop road adjoining the property on the north and told Cantrell that the part that the highway had taken off was actually a benefit to him.

The attorney testified as follows: The parties met at his law office and the McDonalds came in saying "We have a 240-acre farm. We are going to sell 120 acres and the roadway is on that side." The attorney knew and was informed that there was a roadway on the north and a highway on the west side and that the description should exclude the highway. The parties had a general discussion before the papers were drawn but there was no discussion as to the number of acres in the tract being sold. The attorney was not representing either side but was acting as agent of both sides to do what he was instructed to do. He was told by Cantrell, McDonald or Merrick (he could not remember by whom) that the intention was to convey half of the farm less the right of way. There was no disagreement about the acreage. "There was never at any time any promise made to anybody of 120 acres"; no representation that the purchasers were to receive 120 acres, and no indication that "the people" thought they were buying or paying for 120 acres. What was involved in this transaction was 120 acres ("half of this 240 acres") less the highway exception of 10.59 acres. The only way the attorney knew to prepare the description was to describe the west half of the 240 acres less the exception for right of way purposes; "the six forties were going to be split right down the middle." He must have obtained the figure 10.59 from an old deed or papers brought to the office by one of the parties. At the time of closing it was agreed that instead of placing the warranty deed in escrow the deed would be recorded and then mailed to the Cantrells, and that the Cantrells would give a deed of trust back to the McDonalds, and that this was done. (Ralph Cantrell denied that a warranty deed was ever delivered to or received by him.)

The surveyor testified that 107.9 acres of land were described in the contract. He arrived at this figure by the following computation: 120 acres plus 1.99 acres, less exceptions totaling 14.09 acres. The 14.09 acres include 10.59 acres conveyed for highway and 3.50 acres conveyed for road purposes.

■ The testimony of seller, the attorney and the real estate agent, is more credible and satisfying and on this basis we find that McDonald did not represent that the tract contained 120 acres and did not represent that the Cantrells were to receive 120 acres plus house and barn and surrounding land; that prior to signing the contract Ralph Cantrell knew that the

highway and the road had taken land off the west and north sides of the farm, and that for $40,000 he was getting one half the remaining acreage in the west 120, plus the house and barn and the land surrounding them.

Appellants further contend that even if we discount the oral testimony concerning this representation, on the ground that memories fade, or that parties tend to favor themselves in giving testimony, or are impeached, nevertheless the contract of sale in and of itself constitutes undeniable, unimpeachable and undisputed evidence of a representation by sellers that this land contained 120 acres and that the Cantrells were to receive 120 acres of land. This is said to be so because the words "120 acres" prefacing the description of the land constitute a covenant as to acreage.

Under accepted rules of construction we cannot construe these words as a covenant or warranty of acreage. In the construction of contracts for the sale of real estate, as in the construction of deeds, "The mention of quantity of acres, after a certain description of the subject by metes and bounds, or by other known specification, is but a matter of description, and does not amount to any covenant, or afford ground for the breach of any of the usual covenants, though the quantity of acres should fall short of the given amount." 4 Kent's Commentaries (14th ed.) p. 564; Wood v. Murphy, 47 Mo.App. 539, 543, 544. Land in this state is laid off into townships, sections and quarter sections. The description of the main body of land in this contract is definite and certain. It is a description by reference to quarter sections, with a well-defined exception. Such a description is as definite as a description by metes and bounds. "It is an accepted rule of construction that metes and bounds in a description control a call therein for acreage." Baker v. Clay, 101 Mo. 553, 558, 14 S.W. 734, 735; Ware v. Johnson, 66 Mo. 662, 668; Campbell v. Johnson, 44 Mo. 247, 250. Likewise,

references to sections and portions of sections control a call for acreage. The words "120 acres" constitute mere descriptive matter, and not a covenant of acreage. The descriptions of the main body of land, both in contract and deed, plainly show that it was the intention of the parties to sell and convey one half of a tract definitely described by reference to a quarter section and half of a quarter section, with an exception of specified acreage. We cite the following cases as respected authority construing similar acreage references in similar legal descriptions as descriptive matter merely, and not covenants, and not of the essence of the contract. Wood v. Murphy, supra; Anthony v. Hudson, 131 Ky. 185, 114 S.W. 782; Hays v. Hays, 190 Ark. 751, 81 S.W.2d 926; Security Loan & Abstract Co. v. Marchman, 41 Ga.App. 808, 154 S.E. 822; Pearson v. Heard, 135 Ala. 348, 33 So. 673; O'Shea v. Hampton, 127 Neb. 60, 254 N. W. 670.

It is clear to us that this was a sale in gross by the tract, and not a sale by the acre. Cases, supra. The fact that the consideration is fixed at a lump sum tends to show this. 1 A.L.R.2d 28 § 13, note 8. Nothing in either the contract or the deed indicates the contrary. That fact is clinched by the testimony of Ralph Cantrell that it was a package purchase for $40,000 and that in their negotiations "no mention was made of how much per acre."

"Whenever it appears by definite boundaries, * * * that the statement of the quantity of acres in the deed is mere matter of description, and not of the essence of the contract, the buyer takes the risk of the quantity, if there be no intermixture of fraud in the case." Kent's Commentaries, supra, ibidem.

Since there was no representation as to the acreage there can be no finding of actual fraud, because a false representation is the first requisite of a fraud case. This eliminates the necessity of addressing

ourselves to the remainder of appellants' brief, in which an effort is made to demonstrate that each and every other element of fraud was established in this case.

The judgment is affirmed.

WELBORN and HIGGINS, CC., concur.

PER CURIAM.

The foregoing opinion by HOUSER, C., is adopted as the opinion of the court.

All of the Judges concur.