2010 Ark. App. 329
**Sam DURHAM, Appellant**

v.

**Terry SMITH and Susan Smith, Appellees.**

**No. CA 09–1085.**

Court of Appeals of Arkansas.

April 14, 2010.

Mark Franklin Cooper, Cooper & Bayless, P.A., Mountain Home, AR, for appellant.

Larry Dean Kissee, Ash Flat, AR, for appellee.

WAYMOND M. BROWN, Judge.

This case is the result of a deal between friends that went bad. Sam Durham purchased land in Izard County from Susan and Terry Smith. After learning that the acreage was less than the one thousand acres he thought he had purchased and after a bank foreclosed on a security interest on equipment located on the property, Mr. Durham sued the Smiths. But the Izard County Circuit Court denied him relief after finding that Mr. Durham failed to prove that he was damaged in either the land-sale contract or the conversion of a tractor and hay baler. The circuit court correctly ruled that Mr. Durham failed to prove damages in the land-sale contract, despite the discrepancy in the acreage, but it erred in denying damages on the conversion claim when it based its denial on the lack of unjust-enrichment to the Smiths. Thus, we affirm in part and reverse and remand in part.

### Factual and Procedural History

In 2000, the Smiths purchased the property in question, and Mr. Durham took a ride over the property with Mr. Smith. In either 2002 or 2003, Mr. Smith told Mr. Durham that he planned to subdivide and sell the property. Mr. Durham offered to purchase the entire property instead, and exhibits show that he purchased the prop-

erty and various farming equipment for $750,000. From here, however, the trial testimony widely varies.

Mr. Durham testified that Mr. Smith had always referred to the property as one thousand acres and that, when he added up the acreage on a plot plan the night before closing, he (Mr. Durham) determined that the property was 997 acres. At trial, he was shown the closing settlement statement, which revealed that he was purchasing 920 acres. Mr. Durham stated that he never saw that he was purchasing 920 acres and that, had he seen it, he would have ignored it because Mr. Smith had told him the property was 997 acres. He claimed that he would not have signed the closing documents had he known he was buying only 920 acres. Mr. Durham ultimately sold the property, which was actually 912 acres, for $1000 per acre. He wanted the Smiths to pay him $85,000, which represented the difference between the acreage he thought he was getting and the acreage he actually purchased.

Prior to closing on the purchase, Mr. Durham asked the Smiths for a list of the equipment on the property. The purpose was to obtain a loan from First National Bank of Izard County. Two copies of the equipment list were entered into evidence. The first simply listed the equipment and its value. The second list was similar, except that typewritten on the bottom was a statement that Mr. Durham would assume the debts owed on the equipment and that the only debts were on a tractor and a hay baler. The second list was signed by Mr. Durham and the Smiths. Also introduced into evidence was a bill of sale for the equipment. Above the Smiths' signatures was a statement attesting that the equipment was free of all encumbrances. Mr. Durham testified that, about one month after closing, Mr. Smith told

him that there was one payment due on the tractor and that he did not have the $7025 payment. Mr. Durham said that he made the payment and that he did so because Mr. Smith was his friend.

At some point after closing, Mr. Durham discovered that he could no longer pay his son a salary to stay on the property. He could not return to the property himself because he was dealing with a failing business in San Antonio, Texas. Mr. Durham testified that, once his son left the property, Mr. Smith went to the farm and took some of the equipment, including the tractor and the hay baler. Eventually, the bank foreclosed on the security interest. Representatives from the bank went to Mr. Smith and took all of the equipment except the tractor and hay baler, which Mr. Smith claimed belonged to him. The bank sold the rest of the equipment to pay the debt.

Mr. Durham also relied on testimony from Danny Moser, president of First National Bank of Izard County. Mr. Moser stated that he relied on all of the documents in the record when he gave Mr. Durham a loan to purchase the property. Specifically, he relied on a financial statement from the Smiths, dated January 9, 2004, showing that the property (950 acres and a house) was valued at $750,000 and the bill of sale stating that the equipment being sold to Mr. Durham was free of any encumbrances. On cross-examination, however, Moser testified that he made the $750,000 loan based on 920 acres. He also described the controversy that arose when the bank repossessed on the equipment. Once the bank had a court order, Mr. Smith allowed the bank to take all of the equipment except for the tractor and hay baler. He understood that the bill of sale transferred ownership of every piece of equipment to Mr. Durham, but he would have questioned that understanding had he

seen the language typed at the bottom of the second list of equipment.

The Smiths' testimony differed from Mr. Durham's in several respects. First, Mr. Smith denied representing that he owned one thousand acres. He testified that he purchased 920 acres and that he sold 920 acres more or less to Mr. Durham. Mr. Smith also stated that Mr. Durham knew the tractor and hay baler were being financed and that he asked Mr. Durham not to put those items on the equipment list because "it would get us in trouble." He admitted that he kept the tractor and hay baler when the bank repossessed the other equipment and that he sold the items to pay what was owed on the items. Mr. Smith claimed that the $7025 check from Mr. Durham was to reimburse him for the payment he made on the tractor. On cross-examination, he stated that he and Mr. Durham had a "gentlemen's agreement" requiring him (Mr. Smith) to transfer title to the tractor and hay baler once Mr. Durham paid it off.

The court ruled from the bench. It stated that Mr. Durham bought the property in gross, not by the acre, and that he was stuck with that purchase. The court found that Mr. Durham had failed to prove that he was damaged as a result of the sale. As for the tractor and hay baler, the court agreed that Mr. Smith took those items. But it also found that the parties likely did not want the bank to know that there was debt on those pieces of property. It also was not persuaded that Mr. Durham paid the $7025 simply because of his friendship with the Smiths. Rather, the court opined that Mr. Durham had agreed to make that payment and that the bank was not supposed to know about it. Relying on the testimony that Mr. Smith sold the tractor and hay baler for the payoff, the court found that the Smiths were not placed in a better position as a result of this transaction, and it denied Mr. Durham's conversion claim on these two pieces of property.

Mr. Durham presents two issues to this court. First, he challenges the finding that he was not damaged by the sale of the property. He asserts that the circuit court erred in finding that the transaction was a sale in gross without considering other facts suggesting fraud, misrepresentation, or gross mistake. Second, he argues that the circuit court erred in not awarding damages for conversion of the tractor and hay baler. He contends that the court should not have considered an unjust-enrichment test to determine the measure of damages.

### Standard of Review

We review a circuit court's findings of fact after a bench trial under the clearly erroneous standard.[1] A finding is clearly erroneous when, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake has been made.[2] In this review, we view the evidence and all inferences therefrom in a light most favorable to the Smiths (the appellees).[3] But we give no deference to the circuit court's conclusion on a question of law.[4]

### Land–Sale Contract

Though Mr. Durham's point on appeal states in part that the circuit court erred in finding that the contract was for the

---

**1.** *First Nat'l Bank of Izard County v. Garner,* 86 Ark.App. 213, 167 S.W.3d 664 (2004).

**2.** *Id.*

**3.** *Murphy v. City of W. Memphis,* 352 Ark. 315, 101 S.W.3d 221 (2003).

**4.** *Id.*

sale of land "in gross," the crux of his argument is that the circuit court erred in not determining whether the deficiency in the acreage was the result of fraud, misrepresentation, or gross mistake. He relies on the evidence suggesting that he agreed to purchase almost one thousand acres and his testimony that he would not have signed the settlement statement had he known that he was only receiving 920 acres.

■ The evidence shows that Mr. Durham purchased the land in question in gross, not by the acre. When a seller conveys a specific tract of land described by metes and bounds, with words signifying the acreage more or less, the contract is a contract in gross—not by the acre.[5] If the acreage is less than that stated in the contract, the right to relief must be founded upon fraud, misrepresentation, or gross mistake.[6] Absent fraud, however, the buyer takes the risk of the quantity.[7] When determining a right to damages, the law looks to all facts tending to show the intent of the parties and determines whether the discrepancy was of such magnitude that the parties would not have executed the contract if they knew the true facts.[8]

■ The discrepancy between the acreage listed in the contract and the actual acreage, by itself, is not sufficient to establish fraud.[9] To establish fraud, Mr. Durham had to prove that (1) the Smiths misrepresented the acreage, (2) the Smiths either knew that they were misrepresenting the acreage or had insufficient evidence upon which to make the representation, (3) the Smiths intended to induce him to act or not act, (4) he justifiably relied on the Smiths' misrepresentation, and (5) he suffered damages as a result.[10] The exhibits entered into evidence showed that Mr. Durham was purchasing less than one thousand acres. Mr. Durham relies on his testimony that Mr. Smith represented that the property was one thousand acres. Mr. Smith, however, denied that testimony, and our standard of review requires us to defer to Mr. Smith's testimony. Further, Mr. Durham was familiar with the property, and his own testimony established that he, not Mr. Smith, made the offer to buy the property. Finally, other than Mr. Durham's testimony, the record contains no evidence that the property was worth less than the contract price at the time the parties closed on the sale, even with the discrepancy in the acreage. Mr. Durham failed to establish sev-

---

5. *Ryan v. Batchelor,* 95 Ark. 375, 129 S.W. 787 (1910).

6. *Id.*

7. *Hays v. Hays,* 190 Ark. 751, 81 S.W.2d 926 (1935); *Harris v. Milloway,* 9 Ark.App. 350, 660 S.W.2d 174 (1983).

8. *Hays, supra; Burk v. Hefley,* 32 Ark.App. 133, 798 S.W.2d 109 (1990).

9. As noted by the Smiths, Arkansas courts have denied relief in cases where the deficiency was greater than that in this case. *See Birch–Brook, Inc. v. Ragland,* 253 Ark. 161, 485 S.W.2d 225 (1972) (7.743–acre discrepancy out of 89.293–acre contract). The court in *Birch–Brook* noted many other cases where a court denied relief due to a deficiency in

acreage. *See Young v. Bradshaw,* 224 Ark. 467, 274 S.W.2d 466 (1955) (deficiency of 73 acres out of 200 acres); *Bell v. State Nat'l Bank,* 158 Ark. 640, 239 S.W. 19 (1952) (deficiency of 94 acres out of 1120 acres); *Gilbertson v. Clark,* 175 Ark. 1118, 1 S.W.2d 823 (1928) (deficiency of 19 acres out of 71 acres); *Daoust v. Sharum,* 163 Ark. 662, 260 S.W. 709 (1924) (deficiency of 22 acres out of 320 acres); *Mobbs v. Burrow,* 112 Ark. 134, 165 S.W. 269 (1914) (deficiency of 53 acres out of 564.85 acres). *See also Ryan, supra* (deficiency of 25 acres out of 72 acres); *Burk, supra* (deficiency of 7.65 acres out of 19.65 acres).

10. *See, e.g., Joplin v. Joplin,* 88 Ark.App. 190, 196 S.W.3d 496 (2004).

eral of the elements of fraud. Thus, the circuit court's decision that Mr. Durham failed to establish damages from the sale of the property is not clearly erroneous. We affirm on this point.

### Conversion of the Tractor and Hay Baler

Mr. Durham also alleges that the circuit court erred in not granting him damages for conversion of the tractor and hay baler. He notes that the circuit court found that the Smiths wrongfully took the equipment, but he argues that it erred when it denied him benefits upon finding that the Smiths were not put in a better position as a result of the conversion. The Smiths assert that no conversion occurred and that they were allowed to repossess the tractor and hay baler when Mr. Durham failed to pay for it. We agree with Mr. Durham.

First, the circuit court found that a conversion did occur. One commits conversion when he or she wrongfully commits a distinct act of dominion over the property of another that is inconsistent with the owner's rights.[11] The intent required is not conscious wrongdoing but rather an intent to exercise dominion or control over the goods in a way inconsistent with the plaintiff's rights.[12] Here, the circuit court found that the Smiths wrongfully took the property. Contrary to their argument, nothing in the circuit court's ruling suggests that it thought the Smiths were entitled to repossess the tractor. Even though there was an agreement for Mr. Durham to assume that debt, the Smiths failed to present evidence estab-

lishing a right of repossession in the event that Mr. Durham failed to pay that debt.[13]

More important, the circuit court spoke in terms of whether the Smiths were put in a better position as a result of the conversion. But the proper measure of damages is the fair market value of the property at the time and place of conversion.[14] Fair market value is the price a piece of property would bring between a willing seller and a willing buyer in the open market after negotiations.[15] In finding that the Smiths were not unjustly enriched by the conversion, the circuit court appeared to be denying damages on what was equitable. But this was clearly wrong.[16] Mr. Durham was entitled to whatever the tractor and hay baler were worth at the time of conversion. Had the court found that the Smiths were entitled to some type of offset and that the offset was worth more than the value of the converted property, then it would have been justified to find that Mr. Durham had not been damaged. Absent those findings, however, the circuit court was wrong to deny damages on an unjust-enrichment theory. Accordingly, we reverse the circuit court on this point and remand for reconsideration of damages for conversion.

Affirmed in part; reversed and remanded in part.

VAUGHT, C.J., agrees.

PITTMAN, J., concurs.

11. *Buck v. Gillham*, 80 Ark.App. 375, 96 S.W.3d 750 (2003).

12. *Id.*

13. *See Mercedes–Benz Credit Corp. v. Morgan*, 312 Ark. 225, 850 S.W.2d 297 (1993) (reiterating the right of the creditor to repossess

collateral upon default if he or she can do so without breaching the peace).

14. *Buck, supra.*

15. *Id.*

16. *See id.*