DIAL v. HONEYCUTT.

4-4700

Opinion delivered June 21, 1937.

*Thomas E. Toler,* for appellant.
*Oscar Barnett,* for appellee.

McHANEY, J.   Appellee was the owner of 200 acres of cutover timber land in Hot Spring county, 120 acres in section 20 and 80 acres in section 18 T. 4 S, R 18 W. He had permitted this land to forfeit for the taxes of 1930 and same was sold to the state.   Prior to February 8, 1936, appellee and appellant had some negotiations about the sale and purchase of the timber on this land, appellee says all the land, while appellant says the 120-acre tract.   Appellant offered $150 for the timber on the larger tract.   An examination of the tax records disclosed title in the state; so another conference was had between them, and it was agreed that appellant should buy from the state the 120 acres, according to his testimony, but redeem all the land, according to appellee.   However, appellant came to Little Rock, and purchased the 120-acre tract from the state in his own name for $135 and received a deed therefor on February 6, 1936.   Thereafter, on February 8, 1936, the parties entered into the following written agreement:

"We, the undersigned, agree that we will execute proper papers covering the sale and transfer of lands upon the terms and conditions as follows:

"It is agreed that Will Dial has purchased from the State of Arkansas, the following lands, to-wit:

"Northwest fourth of the northeast fourth and the north half of the northwest fourth, all of section twenty, township 4 south, range 18 west, containing 120 acres, more or less, situated in Hot Spring county, Arkansas.

"That the said Will Dial agrees to execute his quit-claim deed to the said lands to one B. L. Honeycutt, at his request, some time in the future when suitable to him, but will allow all merchantable timber from eight inches and up to be reserved to the said Will Dial, to be removed from the said lands within three years with the right to enter upon the said lands with such vehicles, trucks and etc., necessary for the removing the said timber.

"It is further agreed that when the above quit-claim deed is executed by the said Will Dial and his wife, the said B. L. Honeycutt will also execute and deliver his timber deed to Will Dial and Zeb Worley. These contracts to be executed will be for the purpose of perfecting the land timber deals referred to herein.

"Made and entered into on this 8th day of February, 1936.

"(Signed)  Will Dial,
"B. L. Honeycutt.
"Witness: Tomas E. Toler, Sr."

On April 8, 1936, appellant and his wife executed and delivered in escrow a quitclaim deed to said 120-acre tract to appellee to be delivered to him when he executed and delivered a deed to the timber to appellant. Appellee refused to perform his part of the contract, but intervened in a suit by the state to quiet and confirm its title, brought February 21, 1936, made appellant a party by cross-complaint, and sought a cancellation of his deed from the state. Appellant answered setting up his contract with appellee, his purchase of the land from the state, and praying specific performance. He also made cross-appellant, T. A. Beason, a party, and sought and obtained a temporary restraining order against him from cutting and removing the timber from said 120-acre tract.

The state abandoned its suit to confirm, and its complaint was dismissed for want of equity. The court decreed that appellee is the lawful owner of all of said lands and canceled the deed of the State Land Commissioner to appellant; canceled the contract above set out

as also the quitclaim deed from appellant to appellee and dismissed the cross-complaint against Beason and that the latter should take nothing by his complaint for damages for the issuance of the temporary injunction. The case is here on appeal and cross-appeal by Beason.

We think the court erred in so holding. The preponderance of the evidence is with appellant. His own testimony is clear and unequivocal and he is supported by the signed, executed and delivered written contract and other evidence. The only reason the deal was not finally closed on February 8, 1936, was because of appellee's domestic affairs, and the matter was postponed for his accommodation, because of his divorce action. He did not want the title back in him at that time and he did not want to consult with his wife about signing the deed. The state's suit was brought to confirm its title after appellant had purchased 120 acres of the land from the state, not only with appellee's knowledge, but with his consent. He and appellant discussed the matter on February 6, the day appellant bought the land from the state. He knew or should have known that appellant could not redeem from the sale. His object was to get the title to the land out of the state and back in his name. As to the 120 acres, he would have accomplished this purpose by the course pursued had he carried out his part of the contract. He repudiated the contract, as he now says, because appellant did not buy or redeem the whole 200 acres. But appellee himself tendered the delinquent taxes on the 80-acre tract and was permitted to redeem. By performing his contract with appellant, he would have gotten title to the other 120 acres. He didn't do this, but sold the timber to others who employed Beason to cut it. Appellee must have known that his contract referred to 120 acres of land and not to 200 acres. It expressly provides that appellant has purchased from the state the NW NE and the N½ of the NW., etc., "containing 120 acres." He cannot be heard to say that he thought it covered the whole 200 acres.

Appellee, also, contends that the sale to the state was void, and that appellant acquired no title by his

purchase. The state's title may have been bad, but that has nothing to do with this contract. Both parties acted on the assumption that the state's title was good in the 120-acre tract, their purpose being for appellee to get the title to his land cleared; for appellant to get the timber in consideration of the price paid and expense incurred.

We think the court erred in not decreeing specific performance of the contract. The decree will be reversed, and the cause remanded with directions to this end. If, in the meantime, the timber has been cut and removed from the land, a judgment for $135 with interest from February 8, 1936, against appellee and a lien on the land itself should be decreed to secure the payment thereof, with costs to appellant.

This disposes of Beason's cross-appeal adversely to his contention, and the judgment is affirmed as to it.