PARKER *v.* WHISTLE.

5-1254                                                301 S. W. 2d 445

Opinion delivered April 22, 1957.

[Rehearing denied May 20, 1957]

*Barham & Swift,* for appellant.

*Marcus Evrard* and *James M. Gardner,* for appellee.

J. SEABORN HOLT, Associate Justice.   On October 29, 1954, appellants, D. C. Parker and wife and Clem Whistle and wife, appellees, entered into a contract under the terms of which the Parkers agreed to sell and convey to the Whistles 1410 acres of land, more or less, for a consideration of $261,800.   Of this amount the Whistles were to pay $51,000 in cash.   Ten thousand dollars, as a part of this $51,000, was paid as earnest money, and the Whistles placed this $10,000 with an escrow agent for this purpose.   The contract also provided that the Whistles were to assume ''principal balance due on first mortgage as of December 1, 1954, in the amount of

$140,000.00; . . . principal balance due on second mortgage as of December 1, 1954, in the amount of $70,-000.00; immediate possession of all lands clear of crops,'' and the Whistles were to be given possession January 1, 1955. This contract further provided: ''It is understood and agreed that if the title is not good and cannot be made good within a reasonable time after written notice is given that title is defective, specifically pointing out the defects, then this earnest money, which has been deposited with Seminole Title & Insurance Company, Agent, is to be returned to purchaser and the usual commission is to be paid the said Agent by the Seller. But if the title is good and the property not paid for as herein specified, this earnest money is to be forfeited to the seller and divided equally between the seller and Seminole Title & Insurance Company, agent. It is expressly understood and agreed, however, by both parties hereto that such forfeiture shall in no way affect the right of either party to enforce the specific performance of this contract. The seller hereby agrees to pay Seminole Title & Insurance Company, agent, $5,600.00 per cent of the total sale price on the real estate as commission.''

It appears that they actually took possession about December 1, 1954 and worked part of the farm for some ten days. On December 9, 1954, a warranty deed was prepared by the Parkers (to the Whistles) in accordance with the contract terms, and this deed with abstract of title was tendered to the Whistles and demand made on them for the purchase price. The Whistles refused to pay, whereupon the Parkers on February 8, 1955, brought the present suit alleging the contract breached by the Whistles, claimed the $10,000 earnest money and additional damages. The Whistles answered with a general denial and in a cross complaint alleged that the number of acres in the farm had been misrepresented as containing 1,410 acres, when in fact it contained less than 1,370 acres, and they were not bound by the contract. They prayed that the contract be cancelled and that they recover the $10,000 earnest money.

A trial resulted in a decree for the Parkers for $1,148.24. This appeal followed.

For reversal appellants rely on these points: "1. The judgment is contrary to the evidence and contrary to the law. 2. Plaintiffs are entitled to damages from the defendants, Whistle, for the breach of contract by Whistle in excess of the sum allowed by the trial court . . . Plaintiffs are entitled to the sum of $10,000 deposited in escrow and in the registry of the court as earnest money and partial payment under the contract as a forfeiture under the terms of the contract; it being the intention of the parties from their actions to consider said sum of money as compensation to the plaintiffs for damages in the event of breach."

After review of all the testimony and the record presented, we have concluded that appellants' contention that they are entitled to the $10,000 earnest money as liquidated damages under the terms of the contract, must be sustained. As indicated, the Parkers sold and the Whistles bought the farm here referred to as the "Dutch Parker Farm", containing 1410 acres more or less, in gross. Whistle went over this farm and noted its boundaries. We find no evidence that he bought by the acre, in fact, the evidence showed there was about 1401 acres in the farm. We find no evidence of any fraud or misrepresentation on the part of Parker, the seller. In *Ryan* v. *Batchelor,* 95 Ark. 375, 129 S. W. 787, we said: "When a vendor conveys for a specified price a tract of land which is described by metes and bounds or otherwise, with the words added, containing a specified number of acres, more or less, this is a contract not by the acre, but in gross, and does not by implication warrant the quantity."

As indicated, the contract here provided: "But if the title is good and the property not paid for as herein specified, this earnest money is to be forfeited to the seller and divided equally between the seller and Seminole Title and Insurance Company, agent." There is no evidence that the title was defective. This earnest money was either to be liquidated damages or a penalty. The evidence tended to show that the Parkers were damaged even more than $10,000. Parker enumerates them as follows: Interest payment on the mortgage debt past

due from December 1 to January 1, $1,148.24, cost of labor and material in complying with Whistle's request for possession—some $3,000, and also an estimated loss of $16,000 in selling at a sacrifice his farm equipment. There was involved here a purchase price of $261,800 and $10,000 obviously is little more than 4% of this amount. We think it clear in the circumstances that this earnest money, which had been paid by the Whistles on the purchase price and held in escrow, was intended by the parties as liquidated damages and to cover any substantial loss that might occur should the buyer fail to perform, and $10,000 was mutually fixed.

In the case of *Hall* v. *Weeks*, 214 Ark. 703, 217 S. W. 2d 828, a situation was presented similar, in effect, to that presented here. There it appears that earnest money in the amount of $4,000 was paid by the buyer, Weeks. We there said: "Penalty, or Liquidated Damages?— That part of the contract affecting the check is a printed form, concluding with an acknowledgment by Welch as agent that the earnest money had been received. Should the buyer default it would 'forfeit' to the seller," and we held: Headnotes "1. Damages—Deposit to Guarantee Performance of Contract.—Check for $4,000 was given as earnest money when contract to purchase tourist court for $40,000 was signed. Purchaser repudiated the agreement by stopping payment on the check. Held, the amount represented by the dishonored check should be treated as liquidated damages, there having been a stipulation that proceeds should be divided between the seller and a named realtor . . . 3. Damages— Agreement to Pay Specified Sum.—The general rule governing liquidated damages is that a promise in advance of breach of contract will be enforced if the sum named is a reasonable forecast of just compensation for the injury, if the harm is difficult or incapable of accurate estimation. 4. Damages—Agreement That Initial Payment be 'Divided'.—Language of a contract disclosing intention of the parties that check for $4,000 be cashed and proceeds 'divided' between designated persons; showing extent of the transaction contemplated, nature of the business offered for sale, (from which the diffi-

culty of estimating in advance what loss would result from a breach)—these considerations were sufficient to warrant the conclusion that liquidated damages were contemplated when the contract was signed." Also in 6 ALR 2d p. 1406, ". . . the amount stipulated to be paid or forfeited in case of a breach is an important consideration; if it bears a reasonable relationship to the probable actual damages, the construction, other things being equal, will be in favor of liquidated damages, . . . if the amount of such damages is . . . uncertain and difficult of estimation the disputed clause will *prima facie* be interpreted as one for liquidated damages."

Having concluded that appellants were entitled to recover the full $10,000 as liquidated damages under the terms of the contract, the decree is reversed and the cause remanded with directions to enter a decree consistent with this opinion.