LEONARD *v.* WOOD.

5-2376                                          348 S. W. 2d 696

Opinion delivered June 5, 1961.

[Rehearing denied September 11, 1961.]

*Arnold & Arnold,* for appellant.

*Shaver, Tackett & Jones,* for appellee.

Jim Johnson, Associate Justice. This is an involved lawsuit seeking specific performance of a contract for the purchase of land.

The trial court made the following findings:

"That O. P. Leonard is the plaintiff; that he has considerable wealth; that he speculates in buying and selling large tracts of real estate; that J. E. Morrison is O. P. Leonard's local agent and also a real estate broker; that he bargained for the land involved in this litigation;

"That on December 20, 1957, Jack Wood and wife, Elizabeth, entered into a contract of sale with J. E. Morrison wherein it provided that Jack Wood and wife, Elizabeth, were to sell him 1,670 acres of land for $35,000.00; that the greater portion of it was accretion land;

"That on April 16, 1956, L. L. Tanner and wife, Grace L. Tanner, et al, filed their suit against Jack Wood and wife, Elizabeth Wood, et al, in the Chancery Court of Little River County, Arkansas, Case No. 950; that the land involved in this Chancery Case included a considerable area of the land contracted to sell to J. E. Morrison and involved in this present litigation; that the L. L. Tanner case will hereafter, in this opinion, be referred to as the Tanner case and this Tanner case was tried on October 20 and 21, 1958; that on March 2, 1959, a Memorandum Opinion in the case was filed by Judge Pilkinton, who tried the case; that on September 8, 1959, a decree was entered and filed, and on September 17, 1959, a nunc pro tunc decree was entered and filed therein; that the plaintiffs, L. L. Tanner, et al, were awarded 459 acres of this land that was included in the contract of sale between Jack Wood and wife, Elizabeth, and J. E. Morrison, agent of O. P. Leonard;

"That on November 5, 1959, J. E. Morrison assigned the contract of sale to purchase this land from Jack Wood and wife, Elizabeth, to his principal, O. P. Leonard; that after the opinion and the decree were entered in the Tanner case, taking 459 acres of land described in the contract of sale between Jack Wood and wife, Elizabeth, and J. E. Morrison, this left only 1,154 acres for Jack Wood and wife, Elizabeth; that Jack Wood then contacted O. P. Leonard and gave him the first opportunity to purchase this 1,154 acres left to Jack Wood after the Tanner case was decided; that O. P. Leonard declined to purchase the land from Jack Wood on the terms offered him;

"That on September 17, 1959, after having given O. P. Leonard a chance to buy this 1,154 acres of land, deeded the land to G. T. Stewart and wife, Mrs. G. T. Stewart, Chester Stewart and wife, Mrs. Chester Stewart, and R. A. Patterson and wife, Mrs. R. A. Patterson, for a total consideration of $34,620.00; that the 1,154 acres was sold by Jack Wood and wife to these parties at the rate of $30.00 per acre;

"That thereafter, on November 23, 1959, O. P. Leonard filed this suit against Jack Wood and wife, Elizabeth, G. T. Stewart and wife, Mrs. G. T. Stewart, Chester Stewart and wife, Mrs. Chester Stewart, and R. A. Patterson and wife, Mrs. R. A. Patterson; that this suit was filed in Little River County, Arkansas, and is Chancery Case No. 1120; that this was a suit in specific performance of the contract entered into by and between Jack Wood and wife, Elizabeth, and J. E. Morrison on December 20, 1957, wherein Jack Wood was to sell to J. E. Morrison 1,670 acres of land for $35,000.00; that this suit was tried before the Court on March 14 and 15, 1960; that the question for this Court to decide is whether O. P. Leonard is entitled to have the sales contract enforced in this court against Jack Wood and wife, Elizabeth, in specific performance of the contract; that O. P. Leonard was willing to pay $20.96 per acre for the 1,154 acres left after the court awarded the 459 acres to the plaintiffs in the Tanner case; that this would be

an abatement in the price paid for said land in proportion to the number of acres diminished as a result of the outcome of the Tanner case; that this is, in brief, the theory of the plaintiff's case; that the defendants, Jack Wood and wife, Elizabeth, argue that they were to receive $35,000.00 for 1,670 acres of land, more or less, and that the amount paid for said land should not be abated in proportion to the number of acres taken from them as a result of the 459 acres awarded to the plaintiffs in the Tanner case; that this is, in essence, the theory of the defendants, Jack Wood and wife, Elizabeth Wood, case;

"That the undisputed evidence is that both Jack Wood and wife, Elizabeth, and J. E. Morrison, agent of O. P. Leonard, had full knowledge of the fact that the Tanner case was pending on the Chancery Court docket in Little River County, Arkansas, at the time the sales contract was entered into on December 20, 1957, by and between them; that it was also well known to both of them that if the Court found in favor of Jack Wood and wife, Elizabeth, and against L. L. Tanner et al, plaintiff in the Tanner case, that he could perform the contract that he had made with J. E. Morrison and could convey to him the 1,670 acres of land for a consideration of $35,000.00; that while, on the other hand, it was just as well known by both of them that if the Court awarded a part of this land to the plaintiffs in the Tanner case, that it would be impossible for Jack Wood and wife, Elizabeth, to perform this contract by conveying 1,670 acres to O. P. Leonard for $35,000.00; that, in other words, there was a future conditional contingency existing in the performance of this contract well known to both Jack Wood and wife, Elizabeth, and J. E. Morrison, and it was as well known that this contingency existed and was out of reach and beyond the control of either one of the parties to this sales contract; that it was impossible for Jack Wood and wife, Elizabeth, to convey 1,670 acres of land, as contracted, if the Court took a part of this land and vested title to it in the plaintiffs in the Tanner case; that this contract was, in effect, and in fact, broken by the decree of the Court in the Tanner

case which was beyond the control of either of the parties in this lawsuit; that since the parties to this sales contract, executed on December 20, 1957, had full knowledge of the Tanner case being filed before this contract was entered into, the plaintiff, O. P. Leonard, cannot now complain that the future conditional contingency existed, the condition being that the contingency might or might not come into existence, depending entirely upon the holding of the Court in the Tanner case, this was a contract that should not be enforced in this court by specific performance;

"That it will be further observed that it is not contended by either side that there was misrepresentation, or fraud, or deceit practiced upon anyone;

"That it would certainly be unfair and inequitable to say that Jack Wood and wife, Elizabeth, should not have the right to bargain on the sale of their 1,154 acres of land left remaining after the Court had taken 459 acres of their land involved in the contract and awarded it to the plaintiffs in the Tanner case; that when all of the facts and circumstances upon the whole case are considered together, the parties to this contract should not be permitted to gamble on the Court's decision in the Tanner case and either one, thereafter, allowed to take advantage of the decision and profit thereby against the other without further bargaining; that the land awarded to plaintiffs in the Tanner case might be a different grade of land to that of Jack Wood; that it is convincing to this Court that the weight of the evidence preponderates in favor of Jack Wood and wife, Elizabeth, and, therefore, it is the holding of the Court that specific performance does not lie to enforce this contract and require Jack Wood and wife, Elizabeth, to execute a deed to O. P. Leonard to this land;

"That neither the plaintiff nor the defendants are entitled to damages against the other;

"That when the contract of sale by and between Jack Wood and wife, Elizabeth, and J. E. Morrison was entered into on December 20, 1957, or thereabout, an

escrow agreement was entered into by these same parties by which O. P. Leonard placed in escrow in the State National Bank, Texarkana, Arkansas, that he would pay to Jack Wood and wife, Elizabeth, this amount if he failed, upon his part, to perform the conditions of the contract of sale; that O. P. Leonard is entitled to have this $3,500.00, placed in escrow thereunder, refunded to him; that all costs expended in and about this proceeding should be paid one-half by the plaintiff and one-half by the defendants.''

The land here in question was described in the contract as follows:

''All that fractional Southwest Quarter and all that fractional Southeast Quarter of Section 5 and all that fractional West Half of Section 8; all in Township 14 South, Range 30 West and all accretions thereto containing a total acreage of 1,670 acres more or less.''

The abstract reflected Jack Wood, et ux, to be the record owners of approximately 275 acres of deeded land. The county tax records listed the land as 281.22 acres. Even so, it is well established in this State that when you convey deeded lands they carry with them the accretions. The exact number of accreted acres was somewhat in conflict.

It is well settled that the mention of quantity of acres after a certain description of the subject by metes and bounds, or by other known specifications, is but a matter of description, and does not amount to any covenant or afford grounds for the breach of any of the usual covenants, though the quantity fall short of the given amount. When the vendor conveys for a specified price a tract of land which is described by metes and bounds or otherwise, with the words added containing a specified number of acres, more or less, this upon the face of the contract is a contract not by the acre but in gross, and does not by implication warrant the quantity. In such event, should there be a deficiency in the quantity, the right of relief for such deficiency is founded upon fraud, misrepresentation or gross mistake. See:

*Harrell* v. *Hill,* 19 Ark. 103; *Goodwin* v. *Robinson,* 30 Ark. 535; *Neely* v. *Rembert,* 71 Ark. 91, 71 S. W. 259; *Joseph* v. *Baker,* 95 Ark. 150, 128 S. W. 864; *Ryan* v. *Batchelor,* 95 Ark. 375, 129 S. W. 787; *Young* v. *Bradshaw,* 224 Ark. 467, 274 S. W. 2d 466; *Parker* v. *Whistle,* 227 Ark. 731, 301 S. W. 2d 445.

Here, as found by the Chancellor, it is not contended by either side that there was fraud, misrepresentation, or deceit practiced upon anyone, nor do we find a contention of gross mistake.

Following the rule set out above, we conclude from the whole case on trial *de novo* that the contract here in question does not set any sum per acre basis and is a gross sale. Accordingly, since the findings of the learned Chancellor are not against the weight of the evidence, the decree is affirmed.

McFADDIN and GEORGE ROSE SMITH, JJ., dissent.

ED. F. McFADDIN, Associate Justice, dissenting. The majority opinion has copied the opinion of the learned Chancellor and then cited some cases to sustain this statement in the majority opinion: ''When the vendor conveys for a specified price a tract of land which is described by metes and bounds or otherwise, with the words added containing a specified number of acres, more or less, this upon the face of the contract is a contract not by the acre but in gross, and does not by implication warrant the quantity. In such event, should there be a deficiency in the quantity, the right of relief for such deficiency is founded upon fraud, misrepresentation or gross mistake.''

The above quoted language from the majority opinion bears no resemblance or connection to the reason given by the Chancellor for his decision. He said that the contract here involved was based on a ''future conditional contingency . . . the condition being that the contingency might or might not come into existence, depending entirely upon the holding of the Court in the Tanner case, . . .'' For this reason the Chancellor concluded that the contract ''should not be enforced in this court by specific performance; . . .'' Evidently the Majority can find no law

to support the "future conditional contingency" theory relied upon by the Chancellor,[1] and learned counsel for the appellee stated in the oral argument that he had found no such law. So the Majority does not mention that theory, but is affirming the decree on the basis that Wood agreed to convey to Morrison 1670 acres of land and that, since Wood lost 459 acres in the Tanner case, Wood should not be required to convey what was left. The Majority's reasoning for such is that Wood did not warrant the quantity and Leonard must either take the remaining land and pay the full purchase price or lose entirely. I submit that the majority opinion is clearly in error under the facts in this case, all of which are not stated in the majority opinion.

At the outset, I think we should clarify the parties. Morrison was the known agent of Leonard, and Morrison has assigned to Leonard; so Morrison and Leonard stand together and the use of one name is the same as the use of the other. Wood and wife conveyed to Stewart and Patterson on September 17, 1959, who took with notice of the claim of Leonard; so it cannot be seriously urged that the other appellees have any rights superior to Wood and wife. The issue, then, becomes whether Leonard is entitled to specific performance against Wood and the other appellees, with abatement of the purchase price in proportion to the acres that Wood cannot convey. That is the issue really involved in this case.

It is admitted that the contract here involved[2] was drawn by Hon. J. P. Vesey, as the attorney for Leonard;

[1] In 11 A.L.R. 2d 390, there is an annotation entitled: "Change of conditions after execution of contract or option for sale of real property as affecting right to specific performance"; and on Page 397 of that annotation cases from twenty-three jurisdictions are cited to sustain this statement: "Equity courts have frequently recognized the principle that, as a general rule, in determining the propriety of ordering specific performance of a contract involving the conveyance of land, the fairness or hardship of the contract should be determined as of the date of its execution, rather than on the basis of subsequent events."

[2] Here is the entire contract that is the basis of this suit:

"This contract made and entered into this the 20th day of December, 1957, between Jack Wood and his wife, Elizabeth Wood, hereinafter designated as grantors, and J. E. Morrison, hereinafter designated grantee, "WITNESSETH: Grantors have this day sold unto grantee for the consideration hereinafter set out and the stipulations hereinafter contained and said grantors hereby specifically agree to sell unto

that under the contract Morrison, for Leonard, deposited $3,500.00 in escrow in the State National Bank of Texarkana; and that the money is still in the bank in escrow. It is further admitted that the abstract and a map showing the 1670 acres, which Wood claimed to own, was delivered to Mr. Vesey[3]; that without unreasonable delay Mr. Vesey examined the abstract and made title requirements; and that the attorney for Mr. Wood undertook to meet the title requirements. I attach considerable importance to the map which went along with the contract. The evidence disclosed that Wood delayed making the contract until he could have the land surveyed to determine the acreage,

the said grantee the following described real estate situated in Little River County, State of Arkansas, to-wit:

"All that fractional Southwest Quarter and all that fractional Southeast Quarter of Section 5 and all that fractional West Half of Section 8; all in Township 14 South, Range 30 West and all accretions thereto containing a total acreage of 1,670 acres more or less, Reserving, however, unto the grantors and unto their grantees, if any, their heirs and assigns an undivided one-fourth interest in the oil, gas and other minerals for a period of 25 years from date hereof. It being expressly warranted by the grantors that they will transfer an absolute title to the grantee to a three-fourths interest in all the oil, gas and other minerals under and upon said lands.

"It is understood and agreed by and between the parties hereto that the price to be paid by the grantee to the grantors is $35,000.00 for said lands, one-fourth of said sum of $35,000.00 to be paid at the time of the signing of the deed to said lands and one-fourth payable one year after date of said deed and one-fourth payable after two years from date of said deed and one-fourth payable after three years from date of said deed, all of said deferred payments to bear interest from date of said deed until paid at the rate of six percent per annum.

"It is further understood and agreed by and between the parties hereto that grantors shall deliver to grantee peaceful possession of the above described lands on or before September 1, 1958. And that said grantors shall pay all taxes upon said lands until September 1, 1958.

"It is further understood and agreed by and between the parties heretofore that on the date of the signing of this contract of sale, or within two weeks thereafter, the said grantors shall deliver to grantee a complete abstract of title to said lands, compiled by a competent abstracter and certified to date of delivery of said abstract. That said grantee shall have two weeks in which to examine the same. If, however, the said grantee is not satisfied that same shows a good title in said grantors, the said grantee will have two weeks from the receipt of said abstract, to deliver to grantors a list of requirements made by said grantee to perfect title, and said grantors shall have 30 days in which to perfect the title so as to meet all valid objections. If the title is good or if the curative work is approved by grantee, grantors will immediately deliver a warranty deed to grantee as set forth above and grantee will execute vendors lien notes as set forth above.

"In witness whereof, the parties have hereunto set their hands and seals this the 20th day of December, 1957, in duplicate, either copy of which may be considered as the original."

[3] This map is in evidence in this case.

since so much of the land involved was accretions; and the map which went along with the contract showed the bank of the river and the extent of the accretions and how the total of 1670 acres had been determined. All parties knew of the *Tanner* suit, which had been pending for some time. The contract gave Wood until September 1, 1958 to deliver possession of the 1670 acres. There was not a word in the contract that would excuse Mr. Wood from fulfilling the contract if he lost the Tanner suit. If Mr. Wood had wanted to make his entire contract contingent on the outcome of the Tanner suit, he could have written it into the contract, but he did not so elect to protect himself. He guaranteed, by the contract, that he was going to win the Tanner suit, and he kept Mr. Leonard's money in escrow all the time.

The Tanner suit was decided by the Chancery Court[4] on September 8, 1959; and on September 12, 1959, Wood and Leonard had a conference in which Leonard stated that he was ready to pay the price of $35,000.00, less abatement for the land lost in the Tanner suit. This abatement would have amounted to more than $6,000.00; but Leonard offered $29,000.00. Wood refused to convey with any abatement as to lost acreage. He insisted that Leonard should pay the full $35,000.00, even though 459 acres had been lost in the Tanner suit. And on September 17, 1959—five days later—Wood conveyed to Stewart and Patterson the 1,154 acres[5] for $34,620.00. Leonard then filed this suit seeking specific performance of the contract of December 20, 1957 and making tender of the full contract price, less the abatement for lands lost in the Tanner suit. So much for the additional facts.

The law is clear that when a vendor (as Wood in this case) makes a contract to convey land and cannot deliver the full acreage covered by his contract, the vendee (as Leonard here) can either sue for damages for breach of

---

[4] Wood did not appeal the Chancery decree in the Tanner case.

[5] The difference between 1,670 acres covered by the contract here involved and the 1,154 acres that Wood conveyed to Stewart and Patterson is 516 acres; but the Chancery decree herein says only 459 acres were lost in the Tanner suit. The remaining 57 acres (516 minus 459) appear to have been accretions to lands that Wood did not own.

the contract or can sue for specific performance with abatement of the purchase price for the undelivered acres covered in the contract. *Hawkins* v. *Lamb,* 210 Ark. 1, 194 S. W. 2d 5. That is exactly what Leonard is seeking in this case. In 55 Am. Jur. 922, ''Vendor and Purchaser'' § 528, the rule is stated: ''Moreover, even though the vendor may not be able to convey the full title or the full amount of property which he contracted to convey, the vendee may, at his election, compel the vendor to execute the contract so far as he is able with an abatement of the purchase price sufficient to compensate for the defect in title or the deficiency in quantity.''[6]

In 49 Am. Jur. 120, ''Specific Performance'' § 102, the rule is stated: ''Where, however, notwithstanding the vendor is unable to convey the full title or the full amount of property which he contracted to sell, the vendee elects to take that which the vendor has, the court will not permit the vendor to object that he does not have the whole estate, but will compel him, if the vendee so chooses, to execute so much of the contract as he is able, generally allowing the vendee to have an abatement of the purchase price sufficient to compensate him for the defect in title or deficiency in quantity.''

And again in 49 Am. Jur. 123, ''Specific Performance'' § 105, the rule is stated: ''In actions by a vendee for the specific performance of a contract for the sale of real estate, where it appears that the vendor is unable to make a complete or perfect title, or that there is a deficiency in the quantity of land contracted to be sold, the general rule is that the vendee, if he so elects, is not only entitled to have the contract specifically performed to the extent of the vendor's ability to comply therewith by requiring him to give the best title he can or convey what he has, but he may compel the vendor to convey his defective title or deficient estate, and at the same time have a just

---

[6] There are several annotations in American Law Reports bearing on the point here involved. Some of them are: 81 A.L.R. 900, "Right of vendor to specific performance with abatement from purchase price where he is unable to perform as to part of property"; and 148 A.L.R. 563, "Purchaser's right to specific performance as to part only of property contracted for where title fails as to rest."

abatement out of the purchase price for the deficiency of title, quantity, or quality of the estate to compensate for the vendor's failure to perform the contract in full."

We have many, many cases decided by this Court which enunciate, reaffirm, and follow the general rule as above quoted. Some of these cases are: *Vaughan* v. *Butterfield,* 85 Ark. 289, 107 S. W. 993, 122 Am. St. Rep. 31; *Hirschman* v. *Forehand,* 114 Ark. 436, 170 S. W. 98; *Osborne* v. *Fairley,* 138 Ark. 433, 211 S. W. 917; *Dial* v. *Honeycutt,* 194 Ark. 339, 108 S. W. 2d 499; *Sebold* v. *Williamson,* 203 Ark. 741, 158 S. W. 2d 667; *Hawkins* v. *Lamb,* 210 Ark. 1, 194 S. W. 2d 5; *Garner* v. *Horne,* 219 Ark. 762, 245 S. W. 2d 229, and cases there cited. To discuss all of the Arkansas cases would unduly prolong this dissent. I have given enough facts and cited enough law to explain my views and show the reason for this dissent in which MR. JUSTICE GEORGE ROSE SMITH joins.