FIRST NATIONAL BANK OF BELLEVILLE, ILLINOIS, *v.* TATE.

Opinion delivered February 4, 1929.

A. G. *Little* and *C. M. Buck,* for appellant.

J. T. *Coston,* for appellee.

MEHAFFY, J. Adolph Knobeloch owned the north half of section 34, township 11 north, range 8 east, and northwest quarter and west one-half of the northeast quarter and southeast quarter of the northeast quarter of section 35, township 11 north, range 8 east, containing 600 acres, in Mississippi County, Arkansas, and entered into a contract to sell said land to Harold White. This contract was entered into some time prior to October, 1919. The contract expressly stated 600 acres, and it did not contain the words "more or less."

On October 3, 1919, White entered into a contract with Tate and Fitzhugh to sell them the land for $75,000, which would be $125 per acre if the tract contained 600 acres. This contract between White and Tate and Fitzhugh contained the same description of the land, followed by the words "containing 600 acres in Mississippi County, Arkansas," and this contract did not contain the words "more or less," or any similar words.

In the contract of sale by White to Tate and Fitzhugh there was to be a cash payment and five promissory notes for the sum of $11,000, each payable in 1, 2, 3, 4 and 5 years from date, bearing interest at the rate of 6 per cent. per annum from date, and a lien was retained for the balance of the purchase money. Said contract also provided for the delivery by White to the purchasers of an abstract of title to the land, and the parties were to have 30 days in which to examine the abstract, for the purpose of making such corrections as might be neces-

sary and meet the requirements of the attorney for the purchasers. The contract also provided that White should have possession of the land until January 1, 1920, at which time he was to deliver a warranty deed and the possession of the land. Said contract further provided for furnishing the purchasers a good and merchantable title to said land, the same to be approved by the attorney for the purchasers.

No deed was ever delivered, as provided for in the contract, and on the 12th day of January, 1920, White assigned the contract with Tate and Fitzhugh to Knobeloch. The assignment reads as follows:

"January 12, 1920. For and in consideration of the sum of $8,350 I assign all my interest in the above contract to Adolph Knobeloch.

"H. B. White."

Thereafter a deed was prepared and signed and acknowledged by Knobeloch and his wife in accordance with the White contract. But Fitzhugh and Tate declined to accept this deed, made some objections to the contract, and Fitzhugh, Tate and Knobeloch mutually agreed to a different contract. That is, it was different as to the amount of the deferred payments and the interest, and this deed to Fitzhugh and Tate from Knobeloch and his wife described the same land which is above described, said description followed by the words "containing 600 acres," but did not contain the words "more or less."

The testimony on the part of the appellees shows that, at the time they entered into this contract and before it was executed, Fitzhugh insisted on knowing the number of acres, and Knobeloch told him that there were 600 acres. Fitzhugh and Tate both swear that they purchased the land, not for $75,000 for the tract, but for $125 per acre. After some of the payments had been made, Knobeloch borrowed money from the First National Bank of Belleville, Illinois, in the town where he lived, and pledged these notes as security for the payment of his note. These notes were not paid at maturity, because Tate and Fitzhugh claimed to have discovered

that there was a deficiency; that there were several acres less than 600 in the tract, and thereupon the First National Bank filed suit in the Mississippi Chancery Court.

The defendants filed answer and cross-complaint, in which they alleged that a new contract was made; that they paid all of their notes promptly, and would have continued to do so if it had not been for the deficiency in the number of acres.

The chancery court found that the sale of the land was by the acres, and not *en masse*. The court also found that Knobeloch represented to Fitzhugh, before the sale was consummated, that the lands contained 600 acres, and that this representation was material and induced the execution of the contract, and that it was false. The court further found that appellees were entitled to a reduction on the purchase price for 11.8 acres at $125 per acre, amounting to $1,475. This appeal is prosecuted to reverse this decree.

The appellant first contends that there is no shortage; that the tract sold contained 600 acres.

Fitzhugh testified that it was distinctly understood that the price was to be $125 per acre, and that Knobeloch represented that the tract contained 600 acres. He also testified that Knobeloch agreed to make a reduction in the price, according to the deficiency in acres.

There was some correspondence, most of the letters having been written by Mr. Fitzhugh, but he also details a conversation with Mr. Knobeloch, which Mr. Knobeloch does not deny.

Fitzhugh then employed a surveyor, and, after agreeing to make good the shortage, if there should be any, Mr. Knobeloch employed a surveyor himself, who made a survey of the land and made a map or plat, which was introduced in evidence, and this plat shows a shortage of 11.8 acres. And Mr. Knobeloch's employee or surveyor, Mr. Gauss, made the plat and testified to its correctness. He testified that he had been in the business of surveyor and engineer practically all of his life; was with the government for about 13 years in this line of work, and since

that time has engaged in private practice; that he was requested to make a survey by the appellees, but stated to them that he had already made one for Mr. Knobeloch and did not feel like it was necessary to make any more measurements, because they had already been made. He testified that, basing his answer on property lines, the shortage in the total tract was approximately 11 acres— 11.8 acres. He was unable to find the corners established by the government because the monuments and evidence had been destroyed, and he stated:

"The original survey by the government was made about a hundred years ago, and then they have been re-established from time to time by local surveys, and to say that an attempt was made to find that original corner would not be true, because it was not, but I have a little better authority than the mere property lines for the location of the quarter corner on the west side of section 34, because there is a local corner 5,280 feet due south of the center of the canal along that line of road, and that quarter corner, which is at the corner of the fence which marks the south line of section 34, is midway between the two corners, which, in the absence of any further evidence, would have to be accepted as the quarter corner. On the east side of 35 there is nothing there but the property corner, that fence corner."

And this witness also testified that he found the accepted corners, and this testimony, together with the testimony of the other surveyor, and the plat made and introduced in evidence, was sufficient evidence to justify the court in finding that there was a shortage of 11.8 acres.

It would be impossible, in many instances, to find anything but accepted corners. After a long period of time the corners and evidences of the corners established by the government are destroyed, and, in many instances, corners established by subsequent surveyors, and the proof of those things cannot be had. This was a question of fact as to whether there was a deficiency in the acre-age, and, unless we could say that the chancellor's find-

ing was against the preponderance of the evidence, we would not be justified in reversing his finding.

It is also contended by the appellant that, if there is an actual shortage, this is not an action on the covenants in the deed. And it is contended that the White contract was assigned by White to Knobeloch, and that this is the contract entered into by Fitzhugh and Tate.

We do not agree with the appellants in this contention, for the testimony, we think, conclusively shows that the White contract was not carried out, but, according to the preponderance of the evidence, there were not only changes in the interest and the amount of the payments and number of notes, but the contract entered into was for $125 per acre, and it was represented by Mr. Knobeloch that there were 600 acres, and, according to the preponderance of the evidence, this was the contract finally entered into.

Any persons competent to make a contract can as validly agree to rescind it as they could agree to make it in the beginning. It is entirely competent for parties who have entered into a contract to modify it, to waive their rights under it, to vary or modify its terms, or to substitute a wholly different contract from the original one. And this may be done by mutual consent, and, according to the preponderance of the testimony in this case, it was so done.

This not only applies to oral contracts, but to contracts in writing as well. It is argued, however, that there is no consideration for the new contract or for the statement that there were 600 acres. It has been many times decided, however, that, so long as a contract remains executory, a mutual agreement of the parties to rescind it requires no new or individual consideration; for the release of each of the parties from his duties and obligations under the existing contract is a sufficient consideration for his agreement to release the other.

It is also true, as we have already said, that the parties may not only agree to rescind, but they may make a new contract with reference to the same subject-matter,

the new contract taking the place of the old, and the substitution of one for the other is a sufficient consideration to support the new agreement. Black on Rescission and Cancellation, vol. 2, 1234; 6 R. C. L. 914.

We think that Mr. Fitzhugh's and Mr. Tate's testimony as to the 600 acres and as to the purchase being by the acre instead of *en masse* is corroborated by the conduct and testimony of Knobeloch himself. Fitzhugh swears positively that that was the understanding, and that Mr. Knobeloch stated that there were 600 acres. Mr. Knobeloch does not deny having said this, except to say that he was not positive about it; could not have been, because he had not had the survey. It is argued that Mr. Knobeloch's promises thereafter to pay for any shortage are without consideration, and this is true so far as that conversation is concerned, but it is competent as evidence because it corroborates, or strengthens rather, the claim of Fitzhugh that that was the agreement originally.

It is contended also that the mention of the number of acres in the deed is not a matter of covenant. But it was certainly, if made as the preponderance of the evidence shows that it was made, a representation which turned out to be untrue, and, according to the undisputed testimony of Fitzhugh, was not only an inducement, but he would not have entered into this contract but for that representation.

Appellant calls attention to *Harrell* v. *Hill*, 19 Ark. 108, 68 Am. Dec. 202, and there are a number of other Arkansas cases to which attention might be called. In all of them, however, the words "more or less" were used after the mention of the number of acres, and it is generally held that "more or less" simply means approximately. And, if there is a very small discrepancy or insufficiency, that a statement of "more or less," or "estimated," will prevent the purchaser from recovering where the difference is trifling or small. But, even where the terms "more or less," or "estimated," or "approximately" are used, or either of them, if there is a very great discrepancy, the purchaser is entitled to recover.

But these cases to which appellants have referred are cases where the sale was *en masse,* and not by the acre. And it is generally held that, where the sale is by the acre, unless the number of acres called for in the deed are actually in the tract, the purchaser may recover the price per acre for the number of acres short.

The first case referred to by appellant is that of *Harrell* v. *Hill, supra,* and the court said:

"The general rule is that, when a misrepresentation is made as to quantity, though innocently, the right of the purchaser is to have what the vendor can give, with an abatement out of the purchase money for so much as the quantity falls short of the representation. * * * The same principle is thus expressed by Mr. Justice STORY: 'The general rule is that the purchaser, if he chooses, is entitled to have the contract specifically performed, as far as the vendor can perform it, and to have an abatement out of the purchase money or compensation for any deficiency in the title, quantity, quality, description or other matters touching the estate." *Harrell* v. *Hill,* 19 Ark. 104, 68 Am. Dec. 202.

It is immaterial whether the representations as to acreage were made innocently or otherwise. It might be a mistake or a fraud, but the rule is that, if one buys a certain number of acres, a misrepresentation as to the number, whether made innocently or fraudulently, entitles the purchaser to recover for the deficiency. And this is not an action for false and fraudulent representations.

The contention of the appellee is, and the preponderance of the evidence shows, that there were 600 acres represented by Mr. Knobeloch to be in the tract, and he may have thought that it contained that. But, if he made the representation, and it was bought by the acre, and there were not that many acres, the purchasers would be entitled to recover without regard to whether there was any fraud or not.

"It is not charged that Solmson knew this representation was false, but it is not essential that that fact be shown. This was a material matter, and he was bound

by his representations, however innocently made." *Solmson* v. *Deese*, 142 Ark. 189, 218 S. W. 657; *Neeley* v. *Rambert*, 71 Ark. 91, 71 S. W. 259.

If the contract was for $125 per acre and it was represented that there were 600 acres, it would be wholly immaterial whether there was any fraud or intentional misrepresentation, because the contract was to pay so much per acre. And the purchaser would in no event be liable for the price of any more acres than the tract contained, no matter how innocent the vendor may have been in making the representations.

There is no evidence of any fraud or any intentional wrong, but we think the great preponderance of the evidence shows that it was a purchase by the acre at $125 per acre; that it was represented to Fitzhugh that there were 600 acres; that he declined to purchase until this statement was made; and the evidence shows a shortage of 11.8 acres. And on the questions of fact involved in the case and determined by the chancellor, his finding is supported by a preponderance of the evidence.

The decree of the chancellor is correct, and is therefore affirmed.

HART, C. J., and KIRBY, J., dissent.