CARTER v. FINCH.

4-2792

Opinion delivered January 30, 1933.

*E. B. Downie,* for appellant.

*W. E. Rhea* and *Cazort & Cronkrite,* for appellee.

SMITH, J. The St..Louis Joint Stock Land Bank, hereinafter referred to as the bank, made a loan upon a farm in Pulaski County of $25,000, which was secured by a deed of trust describing the farm and reciting that there were 620.41 acres of land, more or less. The borrower made default in meeting his payments, and, to save the expense and delay of foreclosure proceedings, executed a deed to one W. L. Bacon under the direction of the bank. The fact appears without serious question that Bacon was only a nominal purchaser and paid nothing for his deed. The obvious purpose was for the books of the bank to show the ownership of the loan, rather than of the land. On July 29, 1927, Bacon conveyed the land to Mrs. Mary S. Finch, the wife of W. P. Finch, an employee of the bank. Mrs. Finch paid nothing for the land, although she apparently assumed the payment of the mortgage debt. This was also a mere bookkeeping transaction.

W. P. Finch, the husband of the last-named grantee, as the agent of the bank, negotiated a sale of this farm to E. L. Carter. The bank denied that Mr. Finch was its agent, but the court found that he had acted in that capacity, and we think the testimony fully sustains that finding. Finch, as the apparent agent of his wife but as the actual agent of the bank, negotiated the sale of the land to Carter, pursuant to which Mrs. Finch executed a deed on September 6, 1927, to Carter, with the usual covenant of warranty. This deed described the farm as "containing in all 620.41 acres, more or less." Carter made a cash payment and assumed the payment of the balance due on the original loan made by the bank, which he testified he would not have done had he known of the deficiency in acreage.

Carter entered into the possession of the land and began to cultivate it, and in April, 1931, wrote the bank

that there was a large deficiency in acreage. The bank denied that it was Carter's grantor, and suit was filed on August 1, 1931, by Carter against the Finches and the bank, in which a rescission of the contract was prayed on the ground of fraud, with the alternative prayer that, if rescission were denied, the purchase price be abated to accord with the actual acreage.

Mrs. Finch filed an answer, in which she alleged that she knew nothing about the farm, and had no interest in it, and that she had received and conveyed the title at the request of her codefendant, the land bank, "without consideration, and without the hope or promise of any compensation; that she was willing and anxious to be of service and to accommodate her husband's employer, the St. Louis Joint Stock Land Bank," and that the check which she had received from Carter as a cash payment had been indorsed and delivered by her to the bank at the time she executed her deed. She prayed that she have judgment against the bank for the amount of any judgment rendered against her. The cause, however, was dismissed as to Mrs. Finch.

The bank defended upon the grounds: (1) that it was not the grantor in the deed; (2) that the plaintiff had bought the farm in bulk, without reference to its actual acreage, and (3) that plaintiff had received the acreage described. As to the right of rescission, the bank pleaded the laches of the plaintiff in bringing this suit praying that relief.

We concur in the view of the court below that Carter is barred by laches from maintaining a suit for rescission, for the reason that this relief was not prayed in apt time.

We concur in the findings of the court below on the other questions in the case except as to the extent of relief which should be granted the plaintiff, Carter, on account of the deficiency in the acreage.

The fact that Carter has delayed too long to be granted relief by way of rescission does not affect his right to recover for the shortage in the acreage. It was said in the case of *Fort Smith Lumber Co.* v. *Baker,* 123

Ark. 275, 185 S. W. 287: "A party who has been induced to enter into a contract for the purchase of property by the false representations of the vendor concerning the quantity or quality of the property sold may have either of these remedies which he conceives is most to his interest to adopt. 'He may annul the contract, and, by returning or offering to return the property purchased within a reasonable time, entitle himself to recover whatever he had paid upon the contract, or he may elect to retain the property and sue for the damages he has sustained by reason of the false and fraudulent representations, and in this event the measure of damages would be the difference between the real value of the property, in its true condition, and the price at which he purchased it; or, to avoid a circuity of action and a multiplicity of suits, he may plead such damages in an action for the purchase money, and is entitled to have the same recouped from the price he agreed to pay.' *Matlock* v. *Reppy,* 47 Ark. 148, 14 S. W. 546."

In the present case we have not only the testimony of Carter that he was induced to buy the land through the false representation as to the acreage, but we have a confirmation of this testimony as to the supposed acreage by the recitals of the deed itself.

It is true the bank was not the grantor in the deed, but its agent was, and its liability for the misrepresentation as to the acreage rests upon elementary principles.

As to the defense that the plaintiff Carter bought the farm without express warranty as to acreage, and without reference to the exact acreage, we have to say, as was said by Mr. Justice RIDDICK in the case of *Walker* v. *David,* 68 Ark. 544, 60 S. W. 418, that in a deed conveying a certain number of acres "more or less," the words "more or less" are precautionary, and are intended to cover slight or unimportant inaccuracies, but do not weaken or destroy the indications of quantity, when no other guide is furnished. Slight discrepancies may be ignored when there is no express warranty as to quantity.

The appellant bank insists that the sale was not made at a given price per acre, but at a fixed price for 620.41 acres, "more or less," but, even so, the deficiency in the instant case is too great to be treated as immaterial. In the case of *First National Bank of Belleville, Ill.,* v. *Tate,* 178 Ark. 1098, 13 S. W. (2d) 587, it was said: "Appellant calls attention to *Harrell* v. *Hall,* 19 Ark. 108, 68 Am. Dec. 202, and there are a number of other Arkansas cases to which attention might be called. In all of them, however, the words 'more or less' were used after the mention of the number of acres, and it is generally held that 'more or less' simply means approximately. And, if there is a very small discrepancy or insufficiency, that a statement of 'more or less,' or 'estimated,' will prevent the purchaser from recovering where the difference is trifling or small. But, even where the words 'more or less,' or 'estimated,' or 'approximately' are used, or either of them, if there is a very great discrepancy, the purchaser is entitled to recover."

The court below found that the purchase price of the land which plaintiff Carter agreed to pay, including the cash payment, was approximately $25,000, and that there is a deficiency of 56 acres, for which credit should be allowed at $48.86 per acre, and that credit for this acreage, at that price per acre, should be applied on the principal indebtedness in the same manner as an advance payment upon the principal indebtedness. We concur in this finding, except that we are of opinion that the deficiency in acreage was greater than that found by the court below. We have before us the evidence of an engineer who twice surveyed the land and made a plat of each survey. The first survey was made in March, 1926, and, according to this survey, the farm then contained 511 acres. This survey was made before the flood of 1927, and the undisputed testimony shows that this flood occurred before the purchase of the land by plaintiff and had caused the caving of 56 acres of the land into the Arkansas River. This river forms one of the boundaries of the land, which is described as lying

south of that stream. The court appears to have allowed credit only for the 56 acres which caved into the river in 1927; but there is equal reason for allowing for the shortage which previously existed.

There was testimony as to certain accretions which, it is claimed, equal the shortage shown to exist by the two surveys. There appears to have been an island in the river near the farm, but the testimony shows that the main channel of the river was originally south of the island, that is, between the island and the original farm. The original owner of the farm claimed no title to this island, but stated that he paid taxes on his original acreage under the expectation that the channel of the river would change and run north of the island and that the old river bed might fill up. This appears to have occurred, and there are certain accretions to this island which equal, in acreage, the shortage claimed, but the testimony does not show that the accretions were made to the farm itself. And there is still a channel of the river, except in very low water, between the farm and the island and the accretions.

The court below did not find, nor do we, that any account should be taken of the alleged accretions, as that land now constitutes no part of the farm.

We conclude therefore that credit should be allowed both for the 56 acres of land lost through the caving banks prior to plaintiff's purchase, and for the shortage previously existing, amounting, altogether, to 165 acres, at the proportionate price per acre, which appears to be $40.30 per acre, and the decree will be reversed and the cause remanded, with directions to allow this additional credit as in the nature of an advance payment upon the purchase money.