Sandra KIRKPATRICK *v.* UNION BANK OF
BENTON, Executor of Estate of Gladys
Milham WIED, Deceased

CA 80-121                                601 S.W. 2d 607
Court of Appeals of Arkansas
Opinion delivered July 9, 1980

*Hall, Tucker, Lovell, Alsobrook & Moudy*, for appellant.

*Ted Boswell, P.A.*, for appellee.

GEORGE F. HOWARD, JR., Judge. This is an appeal from
an order admitting an instrument to probate purporting to be

the last will of Gladys Milham Wied, which was executed six days prior to her death on September 4, 1979.

Under the will, appellant, the daughter of the late Mrs. Wied, was bequeathed $10,000.00 and the balance of the estate, approximately $140,000.00, was left in trust to a sister-in-law and the sister-in-law's adult children and grandchildren.

For reversal, the appellant has alleged the following points:

A. The testimony established that the testatrix did not have the mental capacity to make a will.

B. The testimony established that the will was the product of an insane delusion.

During the course of the trial, Rosamond Mooney, a legal secretary who prepared the will pursuant to instructions given over the telephone by the decedent and also a subscribing witness to the document, testified on cross-examination:

Q. . . . Did she give you any reason why she was leaving $10,000.00 to her daughter, and nothing else?

A. Yes, she did.

Q. What was that reason?

. . .

A. She just told me that she believed Sandra was on dope, and that she did not want her to use everything that there was for this reason."

Appellant testified:

"Q. Yo've heard the testimony of Rosamond Mooney, that your mother told her the reason she was leaving you only $10,000.00 in the Will, was because you were a dope addict.

A. Yes, I heard it.

Q. And Rosamond said that, in your presence at her office. Is that correct?

A. Yes, it is.

Q. All right. Now, are you a dope addict?

A. I am not a dope addict.

Q. Do you take any kind of medication?

A. The only medication . . . you want me to tell you what I take? Is that what you mean?

Q. Well, my first question is; do you take any kind?

A. Yes, I take . . . yes, I do.

Q. What do you take?

A. I am now on Premarin, which is . . .

Q Well, what is that?

A. It's a hormone.

Q. And, that is because you've had what kind of surgery?

A. All right, another one; I also take Tetracycline, which is an antibiotic. I have lost both breasts. I had a mastectomy . . . I've had three mastectomies; three surgeries in 1978.

. . .

Q. Right. Do you take anything that is not prescribed by a doctor, other than aspirin?

A. No, I do not.

Q. Have you, in the past years?

A. Not prescribed by doctors, no. I only take medicine prescribed by doctors.

Q. All right. Okay. Now, did your mother make this same accusation to you, when she was in the hospital in January?

A. Yes, she did, when she came home.

Q. When she came home . . .

A. Yes.

Q. . . . in January?

A. Uh-huh.

Q. All right. And, later, did she call you on the telephone and discuss that again.

A. Yes, she called me on the telephone and felt very badly that she had done it; she said she didn't really mean it, and she didn't know what got into her, but she had . . . you know . . .

. . .

Q. In other words, she did that in January, and then she apologized later?

A. Yes, she did.

Q. And, did she ever mentioned it to you again?

A. She never mentioned it to me . . . you mean . . .

Q. Again.

A. No, she . . .

Q. . . . ever, at any time?

A. . . . never did.

Q. All right.

Mason Kirkpatrick, husband of the appellant, denied that his wife was a dope addict; and stated that during their twenty-eight years of marriage, appellant had used only those drugs prescribed by her physician except aspirins.

At the close of the trial, counsel for the appellant requested the trial court to consider the holding in *Dumas* v. *Dumas*, 261 Ark. 178, 547 S.W. 2d 417 (1977), where the Supreme Court sustained the actions of a trial court in denying the probate of a will on the ground that the will was the product of an insane delusion.

The trial court registered the following comment in response to counsel's request.

"THE COURT:

. . . A person has got a right to believe anything they want to believe, even though I might disagree with it and it might not have any basis, in fact, to a great portion of the population. It still may . . . is her right to believe that way if she wants to believe that way. And, she may leave her property in furtherance of that or . . . to keep from perpetuating something that's contrary to that. I've listened to the testimony here, and I am convinced that at the time that this Will was executed she was competent to execute the Will. It's true, there's been testimony that when she was in the hospital, there were times that she was afraid and wouldn't take her medication . . . ."

The appellee, while arguing in its brief that the rule in *Dumas* v. *Dumas*, supra, has no application here, made the following observation:

"Appellant correctly cites *Dumas* v. *Dumas*, 261 Ark.

178, 547 S.W. 2d 417 (1977) for the rule that a Will may be invalidated because of an insane decision. However, not only can the facts of *Dumas* be distinguished, but counsel for Appellant fails to correctly apply the *Dumas* rule to the facts of the present case.

We are persuaded that the trial court did not fully consider appellant's argument that the purported will was the product of an insane delusion. Consequently, we reverse and remand this case for further consideration of this issue.

It is settled law that while an individual may possess the requisite testamentary capacity, he may, at the same time, be laboring under one or more insane delusions which may have the effect of making his purported will a nullity. Moreover, an insane delusion which will render one incapable of making a will is difficult to define. *Taylor* v. *McClintock*, 87 Ark. 243, 112 S.W. 405 (1908); 94 C.J.S., § 18, p. 708. It is plain, however, that an insane delusion is a false belief, for which there is no reasonable foundation, and which would be incredible under the given circumstances to the same person if of sound mind, and concerning which the mind of the decedent was not open to permanent correction, through evidence or argument. A delusion affects testamentary capacity only when it enters into and controls to some degree the making of a will. *Taylor* v. *McClintock*, supra; *Dumas* v. *Dumas*, supra; *Haines* v. *Hayden*, 95 Mich. 332, 54 N.W. 911; *Kimberly's Appeal*, 68 Conn. 437, 36 A. 850; *Matter of Heaton's Will*, 224 N.Y. 22, 120 N.E. 84.

In *Taylor* v. *McClintock*, supra, the Arkansas Supreme Court observed that an insane delusion, such as will defeat one's Will, may be based upon a belief that his daughter does not care for him or love him as well as she does others, or is ungrateful to him, which is false and without foundation and he adheres to the belief against all evidence and argument to the contrary.

Reversed and remanded.