John B. PENNINGTON et al *v.*
J. H. (Harvey) PENNINGTON

CA 80-492                                    615 S.W. 2d 391

Court of Appeals of Arkansas
Opinion delivered May 13, 1981

312

*James M. Pratt, Jr.*, for appellants.

*G. B. "Bing" Colvin*, for appellee.

JAMES R. COOPER, Judge. This appeal arises from an order dismissing a suit in the Chancery Court of Dallas County, First Division, which sought to set aside a deed from Jackson M. Pennington, deceased, to Harvey Pennington, appellee herein, and an order dismissing an action in the Dallas County Probate Court which sought to set aside the will of Jackson M. Pennington. The Chancery Court action seeking to set aside the deed was consolidated for trial with the probate action seeking to set aside the will and the cases are being heard together here.

The facts are not generally in dispute in this case. Mr. Pennington was survived by eight children, seven natural children and the eldest an adopted child, Harvey Pennington, appellee herein. The will of Jackson M. Pennington left all his assets to appellee to the exclusion of the other seven children, appellants herein. The will was executed February 22, 1978. On April 30, 1979, thirty-nine days prior to his death, Jackson M. Pennington executed a quitclaim deed conveying all his real property to appellee Harvey Pennington. Four points are raised for reversal.

I. JACKSON M. PENNINGTON LACKED TESTA-
MENTARY CAPACITY TO MAKE A VALID WILL
BECAUSE AT THE TIME HE EXECUTED THE
DOCUMENT HE WAS SUFFERING FROM AN
"INSANE DELUSION."

II. JACKSON M. PENNINGTON LACKED MEN-
TAL CAPACITY TO MAKE A VALID DEED BE-
CAUSE AT THE TIME HE EXECUTED THE DOC-
UMENT HE WAS SUFFERING FROM AN "IN-
SANE DELUSION."

In 1977, Mr. Pennington became ill and was hospital-
ized and later transferred to a nursing home. After a petition
was filed, an order was filed on August 23, 1977, in the
Probate Court of Dallas County declaring Mr. Pennington
incompetent and appointing Marvin Pennington, one of
the seven natural children, as guardian of his estate and
person. Mr. Pennington was extremely displeased about the
guardianship and after he was released from the nursing
home he hired an attorney and began efforts to dissolve the
guardianship. In December of 1977, after a hearing on the
petition to terminate the guardianship the Court found that
Mr. Pennington was able to take care of his business to some
extent although the Court found that he was still incompe-
tent. John B. Pennington, another of the seven natural
children, was named successor guardian to his estate and
was given charge of savings accounts and real property. The
appellee was appointed guardian of the person of Mr. Pen-
nington. Jackson M. Pennington was given access to his
checking account and other tangible personal property.

On January 20, 1978, appellee filed a petition to termi-
nate the guardianship and on May 1, 1978, after viewing
medical reports, the Court found Mr. Jackson M. Penning-
ton to be competent and capable of managing his own
affairs. The guardianship was dissolved and the guardians
discharged. The May 1, 1978, order adjudged Mr. Penning-
ton to be competent retroactive to October of 1977.

This Court has previously held that:

... an insane delusion is a false belief, for which there is no reasonable foundation, and which would be incredible under the given circumstances to the same person if of sound mind, and concerning which the mind of the decedent was not open to permanent correction, through evidence or argument. A delusion affects testamentary capacity only when it enters into and controls to some degree the making of a will. *Kirkpatrick* v. *Union Bank of Benton*, 269 Ark. 970, 601 S.W. 2d 607 (Ark. App. 1980).

In *Dumas* v. *Dumas*, 261 Ark. 178, 547 S.W. 2d 417 (1977) the Arkansas Supreme Court defined insane delusion as follows:

An insane delusion is one which has no basis in facts; the conception of a fact which in reality does not exist. If there is *any basis in fact* for the delusion, then it is not such a delusion as to warrant setting aside a legal instrument. Furthermore, the instrument must be the product of the delusion. *Taylor* v. *McClintock*, 87 Ark. 243, 112 S.W. 405 (1908). [Emphasis supplied].

In *Taylor* v. *McClintock*, supra, the Court stated:

... A belief grounded on evidence, however slight, necessarily involves the exercise of the mental faculties of perception and reason; and where this is the case, no matter how imperfect the reasoning process may be, or how erroneous the conclusion reached, it is not an insane delusion. ...
... Mistake, whether of fact or law, moves from some external influence which is weighed by reason. Delusion arises from morbid internal impulse, and has no basis in reason.

Thus we see that in order to constitute an insane delusion there must be no basis whatsoever for the belief; no evidence which would support the belief.

In this case, appellants argue that Jackson M. Pennington suffered from the insane delusion that appellants had stolen $5,000.00 of his money during the time of the guard-

ianship. In support of this contention they cite us to the testimony of Harvey Pennington. Harvey Pennington, appellee here, testified that Jackson M. Pennington did believe that Marvin Pennington had stolen $5,000.00 of his money. He further testified that he, Harvey Pennington, believed that this was the reason Jackson M. Pennington made his will the way he did.

Marvin Pennington testified that he believed the reason the will was made excluding the natural children was because Jackson M. Pennington was mad about the guardianship.

It is clear from the record that Harvey Pennington apparently still believes that Marvin Pennington stole $5,000.00 from the guardianship funds, but there is no evidence in the record other than the testimony of Harvey Pennington to indicate that Jackson M. Pennington actually believed this. Further, and more important, there is nothing in the record to indicate that the will was the product of any delusion if he had same.

It appears from the record that the primary motivating factor behind the will of Mr. Pennington which disinherited his natural children was his extreme displeasure with them for instituting the guardianship and not his belief that money had been stolen from him. He believed that his natural children were afraid that he would have nothing to leave them and that they would not get their share. He was also upset about the payment of attorney's fees to appellant's attorney as a result of the guardianship. While it does appear that there is no basis in the record for a belief on the part of Jackson M. Pennington that Marvin Pennington had stolen $5,000.00, the finding by the trial court that Mr. Pennington was not suffering from an insane delusion is not clearly erroneous or against the preponderance of the evidence. In fact, a preponderance of the evidence requires the conclusion that the will was the product of Jackson M. Pennington's extreme displeasure with his natural children for establishing the guardianship over him. Whether or not the guardianship was in his best interests is of no importance

here as we are dealing with his belief and displeasure over its establishment rather than the necessity for it.

Although thus far we have dealt with the insane delusion argument as it relates to the will, the same conclusions are appropriate regarding the deed. The record is clear that the motivation behind the execution of the deed to Harvey Pennington was the belief by Mr. Pennington that deeds were better than wills.

III. APPELLEE FAILED TO PROVE:

(a) The signature of Jackson M. Pennington on the will as required by Ark. Stat. Ann. § 62-2117; and

(b) The valid execution of the will as required by Ark. Stat. Ann. § 60-403

At trial, two of the three attesting witnesses to the will of Jackson M. Pennington testified and identified their own signatures on the attestation clause of the will.

Appellants make much of the fact that Dr. Delamore and Mr. Abbott were not able to definitely testify that they saw Jackson M. Pennington sign the will. However, Dr. Delamore indicated that he did not believe that he would have signed the attestation clause unless Mr. Pennington had signed the will in his presence. Mr. Abbott was "pretty sure" that he had seen Mr. Pennington sign his name.

The will in this case appears to have been duly executed and the attestation clause was established correctly by the testimony of Dr. Delamore and Mr. Abbott. There is no evidence that the will was executed in any manner other than is required by statute and we believe the Court properly admitted the will to Probate. *Hollingsworth* v. *Hollingsworth*, 240 Ark. 582, 401 S.W. 2d 555.

IV. JACKSON M. PENNINGTON WAS MENTALLY INCOMPETENT ON APRIL 30, 1979, TO EXECUTE A VALID DEED.

We have already disposed of the argument regarding insane delusion under points I and II above and therefore will confine our discussion here to the capacity of Mr. Pennington to execute the deed without regard to the allegation of insane delusion. We believe the finding of the trial court that Mr. Pennington was competent at the time of execution of the deed is not clearly against the preponderance of the evidence. To show incompetency several essential elements must be demonstrated. First, an inability to appreciate the extent and condition of the grantor's property; second, a failure to appreciate the disposition of the property; the failure to understand the consideration; and proof that these elements existed at the time the deed was executed. *Garis* v. *Massey*, 270 Ark. 646, 606 S.W. 2d 109 (Ark. App. 1980).

The party attacking the validity of the deed has the burden of establishing the grantor's mental capacity. *Andres* v. *Andres*, 1 Ark. App. 75, 613 S.W. 2d 404 (1981). The findings of the chancellor will not be reversed unless clearly against the preponderance of the evidence. Since the question of the preponderance of the evidence turns largely on the credibility of the witnesses, we defer to the superior position of the chancellor. *Andres*, supra; *Hackworth* v. *First National Bank of Crossett*, 265 Ark. 668, 580 S.W. 2d 465 (1979).

In this case Judge G. B. Colvin, Jr. testified that he had known Jackson M. Pennington for over forty years. He further testified that he visited with Mr. Pennington for about forty-five minutes prior to the execution of the deed. He further testified that Mr. Pennington was alert during the visit and that Mr. Pennington understood the amount of land which was to be conveyed by the deed.

We find nothing in the record to contradict the presumption of competency and therefore we find no merit in this argument.

Affirmed.