THE CHRISTY COMPANY, INC. *v.*
AINBINDER/SEARCY LIMITED et al

CA 81-78                                    621 S.W. 2d 886

Court of Appeals of Arkansas
Opinion delivered October 7, 1981
[Rehearing denied November 4, 1981.]*

*CORBIN, J., not participating.

*Friday, Eldredge & Clark,* by: *Joe D. Bell,* for appellants and cross-appellees.

*House, Holmes & Jewell, P.A.,* by: *Robert L. Robinson, Jr.,* for appellees and cross-appellants.

TOM GLAZE, Judge. This case involves a contract wherein appellee, Ainbinder/Searcy Limited (Ainbinder), purchased a shopping center site from The Christy Company, Inc. (Christy). The trial court found Christy falsely represented that the site had been surveyed. As a direct result of this misrepresentation, the chancellor determined: (1) that Ainbinder was erroneously led to believe the site was larger than it actually was; and (2) that Christy, by preparing and furnishing certain false documents, misled Ainbinder as to the true location of the water line on the site. At trial, Christy contended that these two problems ensued only due to the mutual mistake of the parties and not because of any misrepresentation or deceit practiced by Christy. Based on the premise of mistake, Christy sought rescission of the parties' contract. The trial court rejected Christy's contention of mistake by granting Ainbinder's request for reformation and specific performance of the contract. However, it denied Ainbinder's request for an abatement in the purchase price, *i.e.,* a reduction in price for shortage in the acreage actually purchased. Both parties appeal. An extensive record and well written briefs were filed in this appeal, which minutely reflect the evidence and legal arguments with which the chancellor was presented before rendering his findings and decision. A careful study of the record prompts us to hold the chancellor was correct in his findings of fact and his application of the law.

The crux of the trial court's decision is based on the chancellor's finding that Christy misrepresented that the shopping center site had been surveyed by Fred Neilsen, a registered local surveyor. At trial, Christy admitted that Neilsen had never surveyed the site. Moreover, Neilsen testified that he never surveyed the site although he did

prepare a perimeter survey of a larger tract of land which included the site. The record clearly reflects that Christy, with the assistance of an architect and engineer, took Neilsen's boundary survey and plat and made it appear to be a final plat, falsely showing that the site had been surveyed by Neilsen. This so-called final plat incorrectly located an easement and erroneously indicated that the site contained 24 acres. This same final plat was used by Christy to gain the City Planning Commission's approval of this property for commercial development purposes. The errors in the amount of acreage and location of the easement were not discovered by Ainbinder or the City Planning Commission until Ainbinder requested Christy to furnish a survey of the shopping center site as required under the parties' agreement. It was only after this request by Ainbinder that Christy obtained a site survey, and the survey showed: (1) The site had 21.57 acres instead of 24; and (2) The easement in which the water line was to have been laid was 13.75 feet west of what was reflected on the final plat previously given to Ainbinder.

The trial court deemed the difference in the true location of the easement as significant, finding it would cost Ainbinder $25,000 to move the existing water line to develop the site. In opposition, Christy argues Ainbinder previously had intended to relocate the water line regardless of any misrepresentation and the only reason it is a problem now is that Ainbinder planned a different building layout than the standard layout offered by Christy. Under the original layout represented by Christy, no part of the water line would have been underneath the shopping center buildings. Ainbinder testified that he could not lay out the buildings as proposed by Christy; and before Ainbinder knew Christy's layout and plat were not true and correct, he had assumed any costs of relocating that part of the water line which would be under the K-Mart building, as required by another layout designed by Ainbinder.

Any agreement made or understanding held by Ainbinder to relocate the water line was prior to learning the true survey informaton from Christy. If Ainbinder had known the lack of authenticity of the plat furnished it by

Christy, it seems obvious to us Ainbinder may never have agreed to relocating any portion of the water line. The parties' buy and sell contract reflected that Neilsen had performed a survey and, in fact, the contract recited a fictitious legal description of the site. More importantly, the $25,000 damages awarded by the trial court were for *added* costs Ainbinder would incur because the water line was not located where Christy had represented. True, Ainbinder had agreed to underwrite the costs to move the line to avoid the K-Mart building. However, Ainbinder's architect, Mr. Reeder, testified that since the water line was located 13.75 feet west from where it was first represented, Ainbinder would be required to offset the water line far enough to the east to permit the line to run parallel with and in front of the east side of the proposed shopping center. To move the line at minimum costs, Reeder proposed the water line must run in a straight line in front of the shopping center and be far enough east to miss the center's furthest protrusion, *viz.*, the proposed K-Mart building. Thus, even if Ainbinder had agreed in the beginning to pay for the part of the line which intersected the K-Mart building, it is obvious that added expenses are to be incurred by Ainbinder moving the other part of the line so that it is straight and in front of the rest of the shopping center. Reeder stated 1,200 feet of the water line would have to be moved at a minimum cost of $25,000.

The burden of proof is upon the one who seeks reformation to establish his right to it by clear, convincing and decisive evidence. *Birch-Brook* v. *Ragland,* 253 Ark. 161, 485 S.W. 2d 225 (1972). Based on the facts before us, we believe the evidence clearly supports the chancellor's finding that it was Christy's misrepresentation regarding the size of the site and the inaccurate platting of the easement which caused the necessary relocation of the water line. The general rule is that the purchaser, if he chooses, is entitled to have the contract specifically performed, as far as the vendor can perform it, and to have an abatement out of the purchase money or compensation for any deficiency in the title, quantity, quality, description or other matters touching the estate. *Harrell* v. *Hill,* 19 Ark. 102, 68 Am. Dec. 202 (1857); See also, *Carter* v. *Finch,* 186 Ark. 954, 57 S.W. 2d 408 (1933). We, therefore, affirm the chancellor's decision to reform the

parties' agreement by reducing the purchase price $25,000, the costs necessary to move part of the water line on the acquired site.

Whether Ainbinder should be entitled to an additional abatement in the purchase price for the acreage shortage is a closer question, but again we affirm the trial court's decision on this issue. In the parties' contract, Christy represented the site was "approximately 24 acres" or "24 acres more or less." In purchasing the site, Ainbinder did not rely on an express warranty as to acreage. Thus, the contract on its face was not per acre but in gross and did not by implication warrant quantity. In such event, should there be a deficiency in the quantity, the right of relief for such deficiency is founded upon fraud, misrepresentation or gross mistake. *Leonard* v. *Wood*, 233 Ark. 769, 348 S.W. 2d 696 (1961), and *Birch-Brook* v. *Ragland, supra.*

The chancellor in this cause found clear evidence of fraud or misrepresentation, but he further concluded that this fact did not warrant an additional finding that the parties would not have contracted had the shortage in acreage been known. In *Gilbertson* v. *Clark*, 175 Ark. 1118, 1 S.W. 2d 823 (1928), the court refused to abate the purchase price where the buyer purchased property in gross and the shortage was more than 25% of the total acreage contracted to be conveyed. In so holding, the court in *Gilbertson* stated the following general rule, which we believe is controlling here:

> *It cannot be said in this case that the difference between the actual and estimated quantity of acres is so gross as to conclusively warrant a finding that the parties would not have contracted had the shortage been known.* It is true that the price was considerable, but, when the attending circumstances are considered, it is evident that the quantity of acres was not the controlling factor in the premises. [Emphasis supplied.]

In *toto*, we find the record contains sufficient evidence to support the chancellor's finding that the purchase price for the shopping center site was dictated by factors other than the number of acres conveyed. Mr. Ainbinder admitted

that he had trouble negotiating with Christy because it demanded too much money. Mr. Ainbinder allowed his agent, Mr. Walters, to negotiate directly with Christy. Neither Mr. Ainbinder nor Mr. Walters, however, made any offer based on a price per acre basis. In fact, when asked how he negotiated $200,000 off of Christy's demand for $1,400,000, Mr. Ainbinder testified he did not know how he negotiated this amount but felt that at the $1,200,000 price, the purchase of the site was a reasonable risk.

The general counsel for Ainbinder testified that the Christy contract and one other are the only ones of 40 or 50 contracts that he had drafted that did not contain an abatement clause. Although the general counsel surmised that he would have included an abatement clause if he had known a survey of the site had not existed, he chose not to include such a clause even though the conveyance was an in gross sale. Mr. Christy steadfastly testified that he would never have been willing to sell the subject site for less than $1,200,000.

Considering all the evidence and the manner in which the parties negotiated the sale of the site, the fact that this was "turnkey property" was significant in reaching the agreed purchase price. In fact, Ainbinder's general counsel testified that Mr. Ainbinder was adamant about the fact that "we were dealing with a situation that had platting, zoning, surveys, utilities and access roads already in and that was the reason that we were paying such a high price." Accordingly, Ainbinder testified that Christy thought the high cost it was demanding was justified in view of the improvements made to the property. It was also significant that the planning commission had already approved the site for commercial purposes. After Ainbinder purchased the site, it was in a position to immediately turn around and ready the site for K-Mart and others to do business.

As we have held so often, the chancellor's findings of fact shall not be set aside unless they are clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses. *Pennington* v. *Pennington*, 1 Ark. App. 311, 615 S.W. 2d 391 (1981). We are

70

unable to conclude the chancellor was clearly wrong in finding the parties would have contracted even though they had known the shortage in acreage had been known.

Affirmed.

CORBIN, J., not participating.